THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v.
HAROLD KONIGSBERG, DEFENDANT-RESPONDENT.

Argued September 12, 1960—Decided October 31, 1960.

*Mr. William A. O'Brien,* Assistant Prosecutor, argued the cause for plaintiff-appellant (*Mr. Lawrence A. Whipple,* Hudson County Prosecutor, attorney; *Mr. Ralph P. Messano,* First Assistant Prosecutor, of counsel and on the brief).

*Mr. Raymond A. Brown* argued the cause for defendant-respondent (*Mr. 'Irving I. Vogelman,* on the brief).

The opinion of the court was delivered by

FRANCIS, J. The defendant, who is under indictment for murder, made two applications to the County Court for admission to bail. The first application was denied; on

renewal almost six months later, bail was fixed at $25,000. Release was stayed to permit the State to seek leave to appeal. This court granted such leave and continued the stay pending determination of the matter.

· In charging the defendant with murder, the Grand Jury utilized the customary short form of indictment which has been in use in New Jersey for many years and which is authorized by the *Rules of Criminal Practice, R. R.* 3:4–3(*b*). See *Graves v. State,* 45 *N. J. L.* 203 (*Sup. Ct.* 1883), affirmed 45 *N. J. L.* 347 (*E. & A.* 1883). It simply charges that Konigsberg and others "on the twelfth day of November, 1958, in the City of Jersey City, in the County of Hudson * * * did wilfully, feloniously and of their malice aforethought kill and murder Joseph E. Barbito * * *." When the motions for bail were presented neither party submitted any affidavits or testimony. The Prosecutor made certain representations in open court as to facts in possession of the State which would be proved at the trial and which in his judgment would warrant a jury verdict of first degree murder. The sufficiency and competency of oral representations in this type of proceeding will be considered hereafter. Our attention shall be devoted first to the more fundamental legal problems.

At common law in England and in this country, including New Jersey, the grant of bail in all cases rested in the discretion of the courts. *State v. Rockafellow,* 6 *N. J. L.* 332 (*Sup. Ct.* 1796); *State v. Capawanna,* 3 *N. J. Misc.* 876 (*O. & T.* 1925); *Fischer v. Ball,* 212 *Md.* 517, 129 *A.* 2d 822 (*Ct. App.* 1957); 4 *Blackstone's Commentaries* 298, 299 (*4th ed.* 1899); 2 *Hale's Pleas of the Crown* 129, 130 (*First Amer. ed.* 1847); 1 *Chilly, Criminal Law* 97 (*2d ed.* 1836); Annotation, 39 *L. R. A.* (*New Series*) 752 (1912); 6 *Am. Jur., Bail and Recognizance* § 24; and see, *N. J. S. A.* 2A:67–14(*c*). The authority to do so seems to have been considered inherent. *State v. Rockafellow, supra; Principe v. Ault,* 62 *F. Supp.* 279 (*D. C. Ohio* 1945). Probably because judges exercised their discretion adversely to the

accused so frequently (see *Ford v. Dilley,* 174 *Iowa* 243, 156 *N. W.* 513, 525 *(Sup. Ct.* 1916); *Orfield, Criminal Procedure From Arrest to Appeal* 104 (1947)), the people of various states of the Union began to include liberal provisions relating to bail in their Constitutions. The first instance occurred in Connecticut in 1818 and the language employed set the pattern for the organic law of all states which later dealt with the subject. Article 1, section 14, said:

"All prisoners shall, before conviction, be bailable by sufficient sureties, except for capital offenses, where the proof is evident, or the presumption great."

Since that time, 40 states, including New Jersey, have adopted substantially the same clause restraining and controlling judicial discretion, thus safeguarding individual freedom prior to criminal conviction. *In re Corbo,* 54 *N. J. Super.* 575, 583 *(App. Div.* 1959); *Index Digest of State Constitutions, Columbia University* 48 (2d ed. 1959); *Code of Criminal Procedure, American Law Institute* 338, 341 (1930).

The provision first appeared in a constitution of our State in 1844. The Constitution adopted in that year contained precisely the same language as that of Connecticut. *Article 1, para.* 10. It is interesting to note that in the minutes of the Convention a motion was made to strike out everything after the word "offenses" "so as to prohibit entirely the admission to bail, of persons charged with capital offenses." It was defeated. *Proceedings of the New Jersey State Constitutional Convention of* 1844, *p.* 157. The 1947 *Constitution* repeats the 1844 provision verbatim.

As a consequence of the *Constitution* the right of the individual to bail became a basic one. Now the courts are under a mandate to allow bail in all criminal cases, including capital offenses, *i. e.,* those for which the death penalty may be imposed (*State v. Williams,* 30 *N. J.* 105, 125 (1959)), excluding only those instances of capital offenses "when the proof is evident or presumption great."

█ It thus appearing that a person accused of a capital offense is entitled to bail unless the proof is evident or the presumption great against him, we come to the principal questions to be resolved. When an application for such conditional release is made, on whom does the burden rest of persuading the trial court that the case is within or without the exception? And in that connection what is the probative force of the indictment?

Attempts to solve these problems in other jurisdictions have produced conflicting results. The decisions fall into three categories: (1) the burden is on the state to adduce some facts in addition to the indictment in order to satisfy the court that the case against the accused meets the constitutional requirement; (2) the indictment is *prima facie* evidence of a capital offense within the constitutional exception and therefore the burden is on the defendant to demonstrate that the proof is not evident nor is the presumption great against him; and (3) the indictment is conclusive against the allowance of bail. *In re Corbo, supra,* at *pp.* 583–584 of 54 *N. J. Super.; Ford v. Dilley, supra,* containing an exhaustive and well reasoned treatment of the subject; *Ex parte Landers,* 110 *Tex. Cr. R.* 604, 9 *S. W. 2d* 1106 *(Ct. Cr. App.* 1928); *Ex parte Ray,* 86 *Tex. Cr. R.* 582, 218 *S. W.* 504 *(Ct. Cr. App.* 1920); *Ex parte Newman,* 38 *Tex. Cr. R.* 164, 41 *S. W.* 628 *(Ct. Cr. App.* 1897); *Commonwealth v. Stahl,* 237 *Ky.* 388, 35 *S. W. 2d* 563 *(Ct. App.* 1931); *State ex rel. Murray v. District Court,* 35 *Mont.* 504, 90 *P.* 513 *(Sup. Ct.* 1907); *State v. Kauffman,* 20 *S. D.* 620, 108 *N. W.* 246 *(Sup. Ct.* 1906); *Annotation* 39 *L. R. A. (New Series), supra; Orfield, supra* 108, 109; *"The Administration of Bail,"* 41 *Yale L. J.* 293 (1931); *A. L. I. Code of Criminal Procedure, supra,* Commentary to Section 68.

█ In searching for the just rule to be employed on applications for bail, certain immutable factors must be recognized. Bail is a constitutional right, one which the judiciary must honor in all criminal cases, even murder,

unless the proof is evident or the presumption great. Release on bond is a concomitant of the presumption of innocence. Refusal of freedom in violation of the mandate of our organic law would constitute punishment before conviction, a notion abhorrent to our democratic system. The underlying motive for denying bail in the prescribed type of capital offenses is to assure the accused's presence at trial. In a choice between hazarding his life before a jury and forfeiting his or his sureties' property, the framers of the *Constitution* obviously reacted to man's undoubted urge to prefer the latter. *State v. Williams, supra,* at *p.* 125 of 30 *N. J.* But when it does not appear on the facts adduced on an application for bail in a particular case that the defendant is reasonably in danger of a conviction of murder in the first degree, not only is the strong flight urge missing, but the basic right to conditional release is imperatively present.

The first matter to be appraised in a proceeding for bail is the indictment. In the light of the *Constitution* and the traditional methods of administration of the criminal law in New Jersey the indictment, representing as it does only a formal charge, should not be regarded as sufficient to demonstrate that the proof of a capital offense is evident or the presumption great. Nor do we believe it should be deemed vested with sufficient *prima facie* force to bring the charge within the reservation of the *Constitution.*

The short form of indictment charges murder generally, not first degree murder specifically. Verdicts of first and second degree murder and manslaughter are permissible under it. In legal effect therefore it charges three crimes. The Grand Jury attaches no degree to the charge; that is left for development at the trial. Further, that body does not consider or decide the issue of bail. It cannot do so for that is the function of the Judiciary. The courts alone can decide whether in a given case the proof of a capital offense is evident or the presumption great.

Moreover, it is common knowledge that proceedings of the Grand Jury are secret and wholly *ex parte,* evidence for the State alone being received. The accused is not present nor can he be represented by counsel, and it is probably fair to say that in some instances he is not even aware that allegations against him are being considered. The prosecutor ordinarily selects the witnesses to testify; usually he gives the only legal advice, the court being rarely called upon during deliberations; and he generally directs the entire proceeding to a considerable extent. To say that a formal accusation of murder under such circumstances sufficiently establishes, even *prima facie,* that the proof of a capital offense is evident or the presumption great to justify the denial of bail is to fly in the face of the constitutional mandate, and to fail in the discharge of our judicial duty. See *Commonwealth v. Stahl, supra.* This conclusion in regard to the nature of our obligation is fortified by pronouncements in other jurisdictions that statutes conferring discretion on the courts to grant bail in *all* cases, or undertaking to bar admission to bail in a capital case upon the return of an indictment, are violative of the constitution. In the former instance, it was held that the Legislature had no power to grant to the judiciary the discretion to refuse bail in such cases where the proof was not evident or the presumption great. *State v. Kauffman, supra.* In the latter, it was said that an attempt by the lawmakers to forbid bail after indictment, whether or not proof to the required degree appeared, could not survive. *State v. Crocker,* 5 *Wyo.* 385, 40 *P.* 681 *(Sup. Ct.* 1895); and see *A. L. I. Code of Criminal Procedure, supra, p.* 345, commentary to Section 67.

Bail, then, being the right of every citizen charged with any crime excepting only the type of capital offense when the proof is evident or the presumption great, who should have the onus of establishing that the conditional freedom should be granted or denied? The answer is not difficult. The burden should rest on the party relying on the exception.

That is the logical and natural rule and the one which conforms with the pervasive presumption of innocence attending all criminal charges. In fact, there is an indissoluble connection between that presumption and the right to liberty before conviction.

The Supreme Court of Iowa, in the well-reasoned case of *Ford v. Dilley, supra,* commented, in a manner worthy of repetition here, upon the contention that after indictment the burden should be on the accused to demonstrate his right to bail:

"* * * Let us see at what point the theory of the minority [of the court] is stopped by logic, a decent regard for the rights of the accused, and the limitations upon the powers of mere human beings. The state avers that the accused is guilty of a charged crime. In all arguments for the claim that the indictment makes *prima facie* proof the major premise is that the grand jury would not indict if there were not evidence justifying indictment. It follows the prosecution knows what and where the justifying evidence is. It certainly does seem more natural that the one who affirms guilt, and that there is evidence which makes the proof of guilt evident or the presumption thereof great, should, in the first instance, be held to point out what that evidence is, rather than that the accused, saying there is and should be no evidence, should go into the wide world in search of that which he says does not and should not exist; and this for the purpose of cross-examining and overthrowing it after he has gathered it.

\* \* \* \* \* \* \* \*

The judicial mind so revolts against thinking the law could have intended this * * * that it should not be held to be the law in the absence of unmistakable provision. If that be still applicant's burden, he was as well off when the common-law rule was most rigidly enforced." 156 *N. W.,* at *pp.* 524–525.

And see *Commonwealth v. Stahl, supra; Ex parte Ray, supra; Ex parte Newman, supra; Ex parte Landers, supra; State ex rel. Murray v. District Court, supra; State v. Kauffman, supra.* It may be said in support of this comment that when the constitutional provision with respect to bail was under consideration in the various states, if it was intended that return of an indictment for murder should *prima facie* or conclusively warrant denial thereof, it would have been an

easy matter to add a sentence to that effect. *In re Losasso,* 15 *Colo.* 163, 24 *P.* 1080, 10 *L. R. A.* 847 (*Sup. Ct.* 1890). Yet no one of the 40 state constitutions contains such a provision. Some significance must be attributed to the omission for it cannot be that the problem was entirely ignored or overlooked. That is particularly true in New Jersey where at the 1844 Convention, as indicated above, an effort was made to exclude all cases of alleged murder from the right to bail. The minutes show that during the argument the proponents of the change in the draft of the clause referred to a specific murder case then pending in one of the counties where the defendant, obviously under indictment, was out on bail.

Our attention has been called to two cases in this State which are said to establish the principle that the return of an indictment is conclusive against the right to bail. These two cases, *State v. Goldstein,* 40 *N. J. L. J.* 71 (*O. & T.* 1917), and *State v. Kuchler,* 3 *N. J. Misc.* 636 (*Sup. Ct.* 1925), involve applications for such release before a single Justice of the Supreme Court (and the same one in both cases). Both of them declare that an indictment for murder creates a strong presumption of guilt and that after the Grand Jury has so acted the court will not "attempt to overcome the presumption thus raised, and inquire into [the] merits for the purpose of admitting defendant to bail." This harsh doctrine is not consistent with *State v. Rockafellow* and *State v. Capawanna, supra,* in both of which proof was received on the merits of the accusation. In any event, for the reasons expressed herein *State v. Goldstein* and *State v. Kuchler* must be regarded as dilutive of the constitutional right to bail.

The view that the indictment of itself is no bar to bail requires consideration of the nature of the State's burden when the application therefor is made. Obviously in such a preliminary proceeding the prosecution should not be required to show the existence of proof which will establish the guilt of the accused beyond a reasonable doubt. In no

jurisdiction is that required. Variant expressions of the test, rather than a clear cut rule of uniform application, are to be found among the decisions of our sister states. *Ex parte Simpson,* 37 *N. M.* 453, 24 *P. 2d* 291 (*Sup. Ct.* 1933), speaks of the "possible" capital offense shown as being murder in the first degree; *Ex parte Verden,* 291 *Mo.* 552, 237 *S. W.* 734 (*Sup. Ct.* 1922), suggests that the proof should tend strongly to show guilt of a capital offense; in *In re Haigler,* 15 *Ariz.* 150, 137 *P.* 423 (*Sup. Ct.* 1913), it was said that the evidence should make it clear to the understanding and satisfactory to the judgment that the crime committed is murder in the first degree and that the defendant is guilty of it. See also, *Ex parte McAnally,* 53 *Ala.* 495, 25 *Am. Rep.* 646 (*Sup. Ct.* 1875); 4 *Wharton's Criminal Law and Procedure,* § 1811, *p.* 654 (1957); 6 *Am. Jur., supra,* § 26; Annotation 39 *L. R. A.* (New Series), *supra, pp.* 775–778.

The search for a test to be applied in this State must be engaged in with an awareness of certain factors. Guilt or innocence is not the issue; there can be no evaluation of evidence with that result in mind; direct conflicts as to inculpatory and exculpatory facts cannot be resolved. Manifestly, the issue of guilt, being the ultimate one, must await jury determination at the trial. In such a framework the just rule for utilization is that bail should be denied when the circumstances disclosed indicate a fair likelihood that the defendant is in danger of a jury verdict of first degree murder. For only in instances where such likelihood exists is his life in jeopardy and the well recognized urge to abscond present.

Caution must be exercised in the administration of the prescription now adopted. Bail should not be granted lightly, nor should it be denied where the hazard of a verdict of first degree murder does not appear to the required degree. In ruling on the application, the court should be careful not to discuss the matter in terms of ultimate guilt or innocence of the accused at trial. Likewise, no opinion should be advanced during argument or thereafter which,

from a public standpoint, may prejudice either the defendant or the State at the forthcoming trial. It is essential that the proceeding be kept in proper perspective as a preliminary one; one which cannot and should not be allowed in any way to bear upon or influence the ultimate outcome of the plenary trial or the evaluation of the resulting verdict.

It is urged that any rule which does not at least accept the *prima facie* sufficiency of an indictment to defeat an application for bail imposes an undue burden upon prosecutors and trial judges. Undoubtedly some time is bound to be diverted occasionally from other court matters by requests for bail in capital cases. But that consideration cannot prevail against the positive command of the *Constitution. Commonwealth v. Stahl, supra; In re Losasso, supra.* Moreover, as the court indicated in *Stahl,* generally there are one or two principal witnesses whose evidence alone may be sufficient to satisfy the requirement. There is no need to go into detail; in many instances defendant's confession might well be sufficient. Certainly in felony murder cases relatively little proof would be necessary. *Ex parte Ray, supra,* is illustrative of the nature of the hearing. There, the State produced two witnesses, one a medical expert, the other an eyewitness. The eyewitness testified that as the victim was walking along the street the accused approached him from behind and without warning struck him on the head with a metal pipe. Then, when the victim collapsed, defendant walked away until he reached the street corner when he fled at full speed. The medical evidence showed that the blow caused a wound 2½ or 3 inches long, and badly crushed the skull and brain. Bail was denied.

█ Procedurally the matter should not be difficult to present. These alternatives suggest themselves:

(1) The matter may be submitted on affidavits or depositions. In *Rockafellow,* affidavits were furnished by State and defense; *State v. Goldstein* simply says that "to some extent the facts in the case have been presented to the Court upon this motion * * *"; in *Kuchler* defendant

submitted his deposition; in *State v. Smith,* 14 *N. J. L. J.* 300 (*O. & T.* 1891), the testimony before the coroner's jury was produced.

(2) Witnesses may be produced by prosecution and defense, and their testimony taken to the extent considered necessary for the nature of the proceeding. In *State v. Capawanna, supra,* the State called witnesses to make a circumstantial case of attempted rape and murder against the defendants. Capawanna did not testify nor did he call any witnesses. His co-defendant called some witnesses and submitted his own affidavit. It does not seem necessary to detail the type of hearing pursued in the many reported cases throughout the country. Suffice it to say that the elaborate annotation already referred to in 39 *L. R. A.* (*New Series*) reveals that generally testimony was offered by one or both sides. See *pp.* 778–782; *Ford v. Dilley, supra,* 156 *N. W.,* at *pp.* 527–532.

A third alternative has been offered. In effect it is the course which was followed in this case. The suggestion is that, if, in addition to the indictment, the prosecutor in open court makes positive representations for the record that he has, and will introduce at the trial, evidence, specifying it with particularity, which demonstrates with reasonable probability that the accused committed a capital offense, in the absence of proof from the defendant, bail may be denied. Support for such a rule is said to be found in the fact that the prosecutor is an officer of the court and a representative of the public. And we are reminded that willful misrepresentations to the court, particularly where individual liberty is involved, would be attended by serious consequences.

The argument has surface appeal but lacks the necessary substance. We repeat that bail is the constitutional right of the accused in all cases, subject to the single exception specified. The Prosecutor's representations, however formally made, are hearsay and can have no force as evidence. See *Ford v. Dilley, supra,* 156 *N. W.,* at *p.* 527. To treat them

as having sufficient probative significance to justify holding a defendant in confinement pending trial is to strip the flesh from the organic privilege given to all persons charged with a capital offense. Moreover, it would virtually reduce to an empty formula the rule set forth above that the burden of bringing the accusation against the defendant within the exception of non-bailable offenses, is upon the State. We have found no case and none has been submitted to us which approves that qualification on the ordinary hearsay doctrine.

The views expressed thus far lead us to a consideration of the propriety of the order of the trial court in this case admitting the accused to bail. As already noted, neither party produced witnesses or affidavits at the two hearings. The State supported its objection to the conditional release by the representations of the Prosecutor as to what his proof would establish at the trial; the court declined to accept them as competent for the purpose. Since we now adjudge such representations to be unacceptable as a basis for denying release, his ruling was proper.

Up to this time our reports have not contained a clear and definitive guide to be applied in this type of case. Therefore, an affirmance of the admission to bail, without further comment, is not a just disposition of the appeal as far as the State is concerned. The representations of the Prosecutor appearing in the record indicate participation by defendant in a first degree murder. He stated that they are supported by two eyewitnesses, the name of one of whom was mentioned during the argument. If that evidence had been furnished to the trial court in affidavit form of one or both of the witnesses, denial of bail would have been clearly justified. Under the circumstances, although on the record before us it must be declared that the action below was valid, for the reason given the matter is remanded to the trial court to provide an opportunity for the Prosecutor (on notice to the defendant) to introduce proof with the formality now adjudged to be necessary. In the meantime

the stay of bail is continued. If reconsideration on the basis outlined or through the submission of some other form of competent evidence is not sought promptly, the defendant shall be released on the bond fixed by the trial court.

*For affirmance and remandment*—Chief Justice WEIN-TRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.