JESSE JAMES BATES AND WILLIAM KALANI MEDEIROS, JR. *v.* THE HONORABLE ALLEN R. HAWKINS, AS JUDGE OF THE FIRST CIRCUIT COURT OF THE STATE OF HAWAII; AND CAPTAIN GEORGE KISHI, AS SUPERINTENDENT OF HALAWA JAIL.

No. 5084.

DECEMBER 29, 1970.

RICHARDSON, C.J., MARUMOTO, ABE, LEVINSON, JJ., AND CIRCUIT JUDGE WONG IN PLACE OF KOBAYASHI, J., ABSENT ON ACCOUNT OF ILLNESS.

464

OPINION OF THE COURT BY MARUMOTO, J.

Petitioners, Jesse James Bates and William Kalani Medeiros, Jr., are under indictment for first degree murder in Criminal No. 41618 of the first circuit court.

In the circuit court, petitioners moved for release on bail under HRS § 709-3, which mandates such release, except for offenses punishable by imprisonment for life not subject to parole "when proof is evident or the presumption great."

The court denied the motion at a hearing confined to presentation of argument. It took no evidence of facts relevant to the motion in the presence of petitioners or their counsel, and, if it had any such evidence, it did not disclose the same to petitioners or their counsel. In denying bail, it stated that it did so for two reasons: first, the statutory requirement that proof be evident or the presumption great was satisfied by the fact that petitioners were indicted and by the representation of the prosecutor who handled the grand jury proceedings that in his opinion the presumption of petitioners' guilt was great; and, second, there were "enough facts in the public press to inform the court that there have been tragedy here, violence concerning other violence, one violence built upon another, and I think that a certain amount of protection to those who testify should be granted * * *."

Following the circuit court denial of bail, petitioners filed in this court a petition for habeas corpus directed to

the presiding judge of the circuit court and to the superintendent of the jail where he is presently incarcerated. In lieu of the requested writ, we issued to the presiding judge an order to show cause why petitioners should not be released upon reasonable bail.

In his return to the order to show cause, the judge repeated the reasons for the denial of bail as stated above, and, in addition thereto, attached copies of affidavits which predated the denial and which implicated at least one of petitioners in the murder charged in the indictment. The existence of these affidavits had not previously been disclosed to petitioners or their counsel.

The issue here is whether "proof is evident or the presumption great," within the meaning of those words as used in HRS § 709-3.

We have no doubt that the words "proof" and "presumption," in the context of HRS § 709-3, relate to the crime with which the person seeking release on bail is charged, not with any crime such person may commit if he is released.

Thus, the circuit court was entirely out of order in considering the newspaper articles, aside from the fact that they were hearsay, for any conclusion based thereon as to possible violence was pure speculation. In this connection, the following statement of Mr. Justice Jackson of the United States Supreme Court, sitting as a circuit justice, in *Williamson* v. *United States,* 184 F.2d 280 (2nd Cir. 1950), in a case involving persons who had been convicted for conspiracy to advocate and teach the violent overthrow of the United States government, is apposite:

> "If I assume that defendants are disposed to commit every opportune disloyal act helpful to Communist countries, it is still difficult to reconcile with traditional American law the jailing of persons by the courts because of anticipated but as yet uncommitted crimes.

Imprisonment to protect society from predicted but unconsummated offenses is so unprecedented in this country and so fraught with danger of excesses and injustice that I am loath to resort to it, even as a discretionary judicial technique to supplement conviction of such offenses as those of which defendants stand convicted."

*Williamson* v. *United States* was a stronger case for denying bail than the case here because it was a post-conviction bail case.

The circuit court was also out of order in basing its decision on the representation of the prosecutor. The duty of deciding whether the proof is evident or the presumption great rests upon the court. To the extent that the court accepted the opinion of the prosecutor that the petitioners' guilt was great, it abdicated its function.

The same may be stated with respect to the indictment. We agree with *Taglianetti* v. *Fontaine,* 253 A.2d 609 (R.I. 1969), in stating:

"We do not believe that an indictment has any evidentiary value relative to the accused's guilt. We take this position because of the nature of the grand jury proceedings. They are secret and wholly ex parte. Evidence is received solely from the prosecutor. The accused is neither present nor represented by counsel. Often the subject is completely unaware that charges against him are being considered; the prosecuting officer controls the selection of the witnesses who appear and testify before the grand jury and it is largely the prosecutor who advises the jurors. The court is rarely called upon during the jury's deliberation. The prosecutor is usually substantially in control of the proceedings."

We hold that the burden of proving that proof is evi-

dent or the presumption great is upon the State. We do so because the concept of release on bond is a concomitant of the presumption of innocence, and, further, in the light of the general rule which requires a party invoking an exception to prove that his case comes within the exception. Here also, *Taglianetti* v. *Fontaine, supra,* may be quoted:

> "The presumption of innocence protects an accused from the moment of indictment until adjudication of guilt. It is only logical that the state, when claiming exception to a defendant's constitutional right to bail, should be put to the task of showing that the case is one that fits within the exception."

This brings up the question of the quantum of proof necessary to satisfy the burden. That quantum certainly is not proof beyond a reasonable doubt. We follow *State* v. *Konigsberg,* 33 N.J. 367, 164 A.2d 740 (1960), in stating that the burden is met when the circumstances disclosed indicate a *fair likelihood* that the accused is in danger of a jury verdict of an offense punishable by imprisonment for life not subject to parole. It is stated in *State* v. *Konigsberg, supra*:

> "The view that the indictment of itself is no bar to bail requires consideration of the nature of the State's burden when the application therefor is made. Obviously in such a preliminary proceeding the prosecution should not be required to show the existence of proof which will establish the guilt of the accused beyond a reasonable doubt. In no jurisdiction is that required. * * *
>
> "The search for a test to be applied in this State must be engaged in with an awareness of certain factors. Guilt or innocence is not the issue; there can be no evaluation of evidence with that result in mind;

direct conflicts as to inculpatory and exculpatory facts cannot be resolved. Manifestly, the issue of guilt, being the ultimate one, must await jury determination at the trial. In such a framework the just rule for utilization is that bail should be denied when the circumstances disclosed indicate a fair likelihood that the defendant is in danger of a jury verdict of first degree murder."

We finally come to the question of the manner in which the requisite evidence may be presented. In this connection, *State* v. *Obstein,* 52 N.J. 516, 247 A.2d 5 (1968), and *State* v. *Menillo,* 268 A. 2d 667 (Conn. 1970), are illuminating, and set forth the procedure with which we agree.

The procedure stated in *State* v. *Menillo, supra,* is as follows:

"It perhaps should be pointed out that the bail hearing is not a determination of guilt or innocence but rather a determination of the preliminary issue of the right to reasonable bail. Unless the accused insists otherwise, it may well be conducted somewhat informally, as upon affidavits. If this cannot be agreed upon, then the accused has the right of cross-examination of the state's witnesses at the bail hearing as well as the right to introduce evidence in his favor. But the court should confine the evidence to the issue involved and not allow an accused to transform the hearing into an unorthodox discovery procedure for forcing the state to produce its case. * * *

"It is also important that the trial court avoid even the appearance of a determination of ultimate guilt or innocence, lest the rights of the state or the accused be prejudiced in the subsequent trial on the merits. * * * Unless the accused objects, the safest course would probably be to hold the bail hearing in camera."

*State* v. *Obstein, supra,* sets forth the procedure more elaborately in the following statement:

"While we said in *Konigsberg* that the burden of showing a fair likelihood that the defendant is in danger of a first degree murder verdict rests upon the State, we repeat a caution expressed in the opinion. On a bail hearing, guilt or innocence of the accused is not the issue. There can be no evaluation of the evidence with that result in mind. * * *

"The nature of the bail hearing seems to require some elaboration beyond that set down in *Konigsberg.* Conduct of the proceedings *in camera* in the absence of objection by the accused is approved. Care must be taken to safeguard him against possible prejudice at his later plenary trial through public revelation or reporting in the press or other media of the obviously incomplete but necessarily incriminating evidence. * * *

"The prosecutor may present the proof in affidavit form on which he bases his opposition to the release of the accused on bail. But *ex parte* affidavits cannot be used over the defendant's objection. * * * Consultation between counsel should settle the problem before the hearing. If agreement is reached to submit affidavits, defendant is entitled to copies sufficiently in advance to enable him to prepare counter-proofs, either by way of affidavits or live witnesses. If defendant declines to proceed by affidavits, the prosecutor must produce the witnesses on whom he relies to meet the test for denial of bail. The same may be said of the testimony adduced before the Grand Jury, if the prosecutor wishes to rely on it at the hearing. If defendant objects because he had no opportunity for cross-examination, the transcript will not suffice. It should be added that the trial judge in his discretion may disregard the consent of counsel and may refuse to proceed in any of these

470

more summary fashions. In this event, of course, the necessary witnesses must be brought in and the normal hearing procedure followed.

"The bail hearing before the trial court is not a unilateral one. That is, the prosecutor cannot limit the testimony to his direct examination of the State's witnesses. The defendant has the right of cross-examination. In this connection it must be remembered that the proceeding is not a wide-ranging one for discovery, nor for exploration or determination of guilt or innocence. The prosecutor, however, cannot prevent the accused from producing witnesses to introduce facts pertinent to the inquiry. * * *

"     *     *     *     *

"Obviously no rule of precise mathematical dimensions can be devised to govern *all* applications for bail. Each case must stand on its own facts, as presented by the State and by the defense, not for the purpose of obtaining a decision on the ultimate issue of guilt or innocence, but simply to enable the trial court to apply the *Konigsberg* test. That test administered by trial courts with restraint commensurate with its purpose will prevent excursions beyond its boundaries. From a practical standpoint it is unlikely that the State will offer more than a highlight of its inculpatory case against the defendant, or that the defense, except in rare instances, will expose much of its own case. For example, in this instance defense counsel was informed after examining the State's affidavit that he could file counter-affidavits if he wished. He did not take advantage of the opportunity. In addition, although counsel indicated a desire to call the defendant as a witness and was granted this permission, he finally decided not to do so. * * *

"There can be no doubt that the facts set forth in the affidavit submitted to the trial court are highly incriminating. Nevertheless, since the affidavit was *ex parte,* it did not suffice as testimony at the hearing when defendant objected and requested the production of the affiant and the right to cross-examine her. In our judgment it was error to refuse the request. For that reason the order denying bail is reversed and the matter is remanded to the trial court to permit the direct and cross-examination of the witness. On the renewed hearing either the State or defense may produce any other witnesses whose testimony is relevant having in mind the limited scope of the inquiry."

An order will be entered directing the circuit court to grant petitioners an evidentiary hearing on their motion for bail determination in accordance with this opinion.

*David C. Schutter* for petitioner Bates.

*James T. Leavitt, Jr.,* Deputy Public Defender, for petitioner Medeiros.

*William H. Yim* and *E. John McConnell, Jr.,* Deputy Attorneys General, for respondent *Judge Hawkins.*