Argued and submitted February 9, petition for writ of habeas corpus
dismissed August 18, 2005

# OSVALDO RICO-VILLALOBOS,
*Plaintiff,*

*v.*

# Bernie GIUSTO,
Multnomah County Sheriff,
*Defendant.*

## (SC S52042)

118 P3d 246

Michael D. Curtis, of Curtis & Correll, Attorneys at Law, Portland, argued the cause and filed the petition and memorandum for plaintiff.

Rolf C. Moan, Assistant Attorney General, Salem, argued the cause and filed the memoranda for defendant. With him on the memoranda were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

BALMER, J.

**BALMER, J.**

This original habeas corpus proceeding requires us to determine whether, in a pretrial release hearing for a defendant in a murder case, Oregon law permits the trial court to rely only on evidence that would be admissible in the defendant's criminal trial. At defendant's[1] pretrial release hearing, the trial court allowed the state to present hearsay evidence through the testimony of a police detective. Based on that evidence, the trial court denied defendant's motion for pretrial release. Defendant challenged his continued pretrial incarceration (and, indirectly, the trial court order denying his motion for pretrial release) in this court by filing a petition for a writ of habeas corpus. For the reasons that we discuss below, we conclude that the trial court properly interpreted and applied the relevant statutory and constitutional provisions. Accordingly, we dismiss defendant's petition for a writ of habeas corpus.

The underlying facts are as follows. Police arrested defendant in connection with a homicide, and a grand jury subsequently indicted him for aggravated murder and other crimes. Defendant requested a pretrial release hearing pursuant to the procedures set out in ORS 135.230 to 135.290, relevant portions of which we quote below. At the hearing, the state's only witness was the police detective who was in charge of the murder investigation. The detective summarized a variety of information obtained in the course of the investigation. He testified about what he personally saw at the murder scene, including the victim's body, and he identified photographs of the scene. He recounted statements made by several Spanish-speaking witnesses who had been interviewed by a Spanish-speaking police officer, hearsay statements from other witnesses, and inconsistent statements made by defendant. He also described medical records, an autopsy report, and a DNA test conducted by the state police. Defendant cross-examined the detective, but he did not seek to introduce any evidence of his own.

---

[1] In this proceeding, the defendant in the underlying criminal case is nominally the plaintiff, and the State of Oregon is the defendant. However, for the sake of clarity, throughout this opinion we refer to the defendant in the underlying case as "defendant" and to the State of Oregon as the "state."

The central legal issue at the pretrial release hearing was whether the state had met the constitutional and statutory burden required for the trial court to deny defendant's motion for pretrial release.[2] Article I, section 14, of the Oregon Constitution provides:

"Offences * * *, except murder, and treason, shall be bailable by sufficient sureties. Murder or treason, shall not be bailable, when the proof is evident, or the presumption strong."

Similarly, ORS 135.240, the applicable pretrial release statute, provides, in part:

"(2)(a)   When the defendant is charged with murder, aggravated murder or treason, release shall be denied when the proof is evident or the presumption strong that the person is guilty.

"(b)   When the defendant is charged with murder or aggravated murder and the proof is not evident nor the presumption strong that the defendant is guilty, the court shall determine the issue of release [in accordance with the procedure for most other offenses.]"

Before the trial court, defendant argued that the evidence that the state introduced failed to demonstrate that the "proof [was] evident" or the "presumption strong" that defendant had committed murder. Specifically, defendant argued, first, that the state was required to produce "clear and convincing" evidence of defendant's guilt and, second, that the state's evidence must be "competent" evidence that would be admissible at defendant's criminal trial. Because much of the detective's testimony consisted of hearsay that would not be admissible at trial, defendant argued that the remaining evidence presented by the state—evidence that

[2] ORS 135.230 to 135.290, originally enacted as part of the revision of the Code of Criminal Procedure in 1973, set out the procedures and substantive standards for criminal defendants to be released from custody pending trial or after a judgment of conviction, if the defendant has appealed. That revision eliminated the word "bail" from the Oregon statutes and instead adopted the term "release" to describe a defendant's release from custody pending trial and the term "security release" to describe release conditioned on a promise to appear in court that is secured by money or property. *See* ORS 135.230 (defining terms). Nevertheless, parties and courts often continue to use the term "bail" as shorthand to describe pretrial release or the amount of security deposit required for such release.

was not subject to any hearsay objection—was insufficient to meet the standard required to deny defendant pretrial release.

The state responded that it was required to show only that the "circumstances indicate 'a fair likelihood' that the defendant is in danger of being convicted of murder or treason," quoting *State ex rel Connall v. Roth*, 258 Or 428, 435, 482 P2d 740 (1971), and, further, that nothing prohibited it from using hearsay testimony to make that showing.[3]

The trial court held that hearsay evidence was permitted in a pretrial release hearing. The court then considered and commented on the strength of the evidence that the state had presented. The court concluded that the state had met its burden of showing that the "proof [was] evident" or the "presumption strong" that defendant had committed the murder, and the court therefore denied defendant's motion for pretrial release. Defendant then filed this original habeas corpus proceeding, alleging that he was being incarcerated in violation of ORS 135.240(2)(a) and Article I, section 14, of the Oregon Constitution and seeking an order from this court directing the trial court to release him or to hold a new hearing in which the state was permitted to use only evidence that would be admissible in defendant's criminal trial.

■    Before turning to the merits of defendant's argument, we first consider the threshold issue whether a habeas corpus petition is an appropriate mechanism by which defendant may challenge the trial court's order denying his motion to set bail and the resulting continuation of his incarceration.

---

[3] In the trial court, the state, rather than relying on the bail provision of Article I, section 14, of the Oregon Constitution, cited Article I, section 43(b). That provision, which was added to the constitution in 1999, provides, in part: "Murder, aggravated murder and treason shall not be bailable when the proof is evident or the presumption strong that the person is guilty." The quoted sentence differs from the parallel sentence in Article I, section 14, only in the addition of the crime of "aggravated murder" to the list of potentially nonbailable offenses and the addition of the words "that the person is guilty" at the end of the sentence. No party cited Article I, section 43(b), in any brief in this court or suggested that the quoted sentence has any different meaning than the parallel sentence in Article I, section 14. We decide this case under ORS 135.240(2)(a) and Article I, section 14, because those are the grounds upon which the parties briefed and argued the case in this court, and we express no opinion as to whether Article I, section 43(b), states a different standard for determining when bail may be denied.

The state argues that, even if defendant's legal analysis is correct, he would not be entitled to traditional habeas corpus relief—release from incarceration—but only to a new hearing using what defendant claims is the correct legal standard. The state suggests that we instead should treat defendant's petition as one seeking a writ of mandamus in which he alleges that the trial court erred by applying the incorrect legal standard in the pretrial release hearing. *See* ORS 34.110 (authorizing writ of mandamus "to any inferior court * * * to compel performance of an act which the law specially enjoins, as a duty resulting from an office, trust or station").

We agree with defendant that habeas corpus is one permissible means to bring the legal issue that he raises to this court. With specified exceptions, "[e]very person imprisoned or otherwise restrained of liberty, within this state * * * may prosecute a writ of habeas corpus to inquire into the cause of such imprisonment or restraint, and if illegal, to be delivered therefrom." ORS 34.310. Article VII (Amended), section 2, of the Oregon Constitution provides, in part, that this court "may, in its own discretion, take original jurisdiction in * * * habeas corpus proceedings." Although habeas corpus petitions ordinarily are filed in the circuit court, *Ex Parte Jerman*, 57 Or 387, 391, 112 P 416 (1910), defendant's petition alleges that his incarceration resulted from a circuit court order. Moreover, this court previously has considered habeas corpus challenges to pretrial release decisions when defendants raised substantial legal issues regarding their incarceration. *See Collins v. Foster*, 299 Or 90, 698 P2d 953 (1985); *Haynes v. Burks*, 290 Or 75, 77 n 1, 619 P2d 632 (1980) (both considering denial of pretrial release on writ of habeas corpus). *But see Connall*, 258 Or at 429-30 (addressing denial of pretrial release in case involving writ of mandamus, rather than habeas corpus).

Here, defendant presently is incarcerated because the trial court declined to allow pretrial release. He raises substantial legal issues regarding his statutory and constitutional right to have bail set pending his trial unless the proof of his guilt is "evident" or the "presumption" of his guilt is "strong." If defendant is correct that the trial court's order improperly rests on evidence that would not be admissible at trial, he is entitled at least to a new pretrial release hearing

at which the state would not be able to rely on some of the evidence that it introduced at the earlier hearing. If a new hearing were not held or if a new hearing were held and the state's evidence did not meet the required standard, defendant would be entitled to pretrial release. Because of the close connection between defendant's assertion that his incarceration is unlawful and his right to be released if his legal argument is correct, we conclude, on the facts here, that habeas corpus is a permissible means for defendant to challenge the trial court's denial of his request for pretrial release. We exercise our discretion to consider defendant's claims, and we now turn to the merits.

■     The issue that divides the parties in this court is whether the relevant statutory and constitutional provisions permit the state, in a pretrial release hearing, only to rely on evidence, which would be admissible in defendant's criminal trial.[4] That inquiry requires us to interpret those provisions.

This court's practice is to construe and apply statutory sources of law before turning to constitutional provisions. *State v. Snyder*, 337 Or 410, 415-16, 97 P3d 1181 (2004). Our primary source of statutory law regarding what evidence is or is not admissible in a criminal action or proceeding is the Oregon Evidence Code (OEC). *See* OEC 101(1) (OEC applies to "all courts," with exceptions not relevant here); OEC 101(2) (OEC applies "generally" to "criminal actions and proceedings"). OEC 101(4)(g), however, provides that, with the exception of rules governing privileges, the Oregon Evidence Code does not apply to "[p]roceedings under ORS chapter 135 relating to * * * security release * * *[.]" The state argues that, because the hearing at issue here is a security release hearing under ORS chapter 135, the Oregon Evidence Code rules regarding exclusion or admission of

---

[4] In this court, the state no longer argues, as it did in the trial court, that pretrial release may be denied if the state shows a "fair likelihood" that defendant is guilty. Rather, the state agrees with defendant that this court in *Haynes v. Burks*, 290 Or 75, 619 P2d 632 (1980), rejected that phrasing of the test in *State ex rel Connall v. Roth*, 258 Or 428, 482 P2d 740 (1971). In *Haynes*, this court concluded that the "fair likelihood" of conviction standard was inconsistent with the constitutional and statutory provisions quoted above—requiring that the proof of guilt be evident or the presumption of guilt strong—because it established too low a standard for the denial of pretrial release. 290 Or at 79.

hearsay at trial, OEC 801 to 806, do not apply. We agree. The text of OEC 101(4)(g) demonstrates that, whatever limitations may exist respecting the material that a trial court may consider at a pretrial release hearing, the hearsay rules in Oregon Evidence Code are not among them.[5]

Defendant further argues that, as a statute, OEC 101(4)(g) cannot alter the constitutional requirements of Article I, section 14. That is true, but we are here simply interpreting the text of the statute itself. Moreover, as we explain below, we also conclude that Article I, section 14, does not prohibit the use of hearsay testimony in a pretrial release hearing.

For its part, the state argues that the legislature demonstrated its intent to permit evidence at a pretrial release hearing that would be inadmissible at trial when it enacted the pretrial release statute, ORS 135.240(2)(a). That statute, quoted above, contains no limitation on the kind of evidence that a court may consider in a pretrial release hearing. In contrast, the statute regarding evidence that the state may present to a grand jury when it considers whether to indict a person—which was enacted at the same time as ORS 135.240(2)(a)—specifically provides that the grand jury "shall receive no other evidence than such as might be given on the trial of the person charged with the crime in question." ORS 132.320(1). We agree that the legislature's decision expressly to *exclude* evidence that would not be admissible at trial from a grand jury proceeding, but not expressly to exclude such evidence from a pretrial release hearing, supports the inference that we draw from OEC 101(4)(g) that the legislature did not intend any such exclusion. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993) ("use of a term in one section and not in another section of the same statute indicates a purposeful omission").

■    We now turn to the substantive provisions of ORS 135.240(2)(a) and Article I, section 14, which provide that bail may be denied to a defendant charged with murder only when the "proof" is "evident" or the "presumption strong." As

---

[5] Defendant argues that, at the least, OEC 101(4)(g) presents no obstacle to his proposed objection to the use of hearsay testimony at the pretrial release hearing—and that is true—but we fail to see how it in any way helps his case.

noted above, if statutory sources of law provide a complete answer to the legal question that a case presents, we ordinarily decide the case on that basis, rather than turning to constitutional provisions. Here, however, the parties have treated the applicable statutory and constitutional provisions as coextensive, and we therefore pause to consider whether, in spite of the parties' approach, there is any basis for concluding that the legislature intended the statute to have a meaning different from the constitutional provision.

The provisions are substantively similar, although they differ in several particulars. The spelling, punctuation, and word order used in ORS 135.240(2)(a) are contemporary, while those used in Article I, section 14, reflect the writing practices of an earlier day. Additionally, the legislature added to the statute the words "that the person is guilty" to identify more clearly the referent to which the phrases "proof is evident" and "presumption strong" apply. That addition, however, simply makes explicit in the statute what always has been implicit in the constitutional provision, namely, that a defendant's right to bail "upon sufficient sureties" does not apply to persons charged with murder or treason *if* the "proof [that the person is guilty of murder or treason] is evident" or the "presumption [that the person is guilty of murder or treason is] strong." Finally, ORS 135.240(2)(a) provides that "release shall be denied" when the required proof is demonstrated, while Article I, section 14, provides that the specified offenses "shall not be bailable." That difference is consistent with the elimination of the word "bail" from the relevant statutes when the standards and procedures for pretrial release were rewritten in 1973 as part of the new code of criminal procedure. *See* William C. Snouffer, *An Article of Faith Abolishes Bail in Oregon*, 53 Or L Rev 273, 274-75 (1974) (describing elimination of bail and substitution of different grounds for pretrial release, including release by depositing security amount with clerk of court).

Neither party suggests that any of those differences between Article I, section 14, and ORS 135.240(2)(a) is a substantive one, and we perceive no basis in the wording of the provisions to hold otherwise. Moreover, the legislative history of ORS 135.240(2)(a) confirms that the legislature chose simply to "restate[ ] the constitutional rule" in the statute

and that it rejected an attempt to use the *Connall* "fair likelihood" of guilt standard because that was a less demanding standard than the constitutional requirement of "evident" proof. *Haynes*, 290 Or at 78. *See* Snouffer, 53 Or L Rev at 281-82 (discussing legislative history of the 1973 revisions to ORS chapter 135). Thus, because the legislature intended the statute to be coextensive with Article I, section 14, we turn to the proper construction of that constitutional provision.

■ ■   The framers of the Oregon Constitution included Article I, section 14, in the original constitution adopted in 1859. In construing a provision of the original constitution, this court examines "[i]ts specific wording, case law surrounding it, and the historical circumstances that led to its creation." *Priest v. Pearce*, 314 Or 411, 415-16, 840 P2d 65 (1992). Our inquiry considers the words of the provision as they would have been understood and used by those who created the provision, and we undertake to apply the principles embodied in the provision to modern circumstances as those circumstances arise. *Smothers v. Gresham Transfer, Inc.*, 332 Or 83, 91-92, 23 P3d 333 (2001).

Looking first to the words of Article I, section 14, we note that the provision establishes two alternative means by which the state may convince a judge that a person accused of murder (or treason) should not be released on bail. The judge may deny bail if the state shows *either* that the "proof [of the defendant's guilt] is evident" *or* that the "presumption [of the defendant's guilt is] strong." We consider separately those two alternative standards, either of which, if met, would support the denial of bail. We do so by examining the meanings of these words as the framers of the Oregon Constitution likely would have understood them.

"Proof" is the "conviction or persuasion of the mind of a judge or jury, by the exhibition of evidence, of the reality of a fact alleged." 2 John Bouvier, *A Law Dictionary, Adapted to the Constitution and Laws of the United States of America* 305 (1839). "In law and logic," according to another authority of the time, "proof" is "that degree of evidence which convinces the mind of the certainty of truth or fact, * * * or from the testimony of others, or from conclusive reasoning." 2 Noah Webster, *An American Dictionary of the English*

*Language* (unpaginated) (1828). "Evident" means "[p]lain; open to be seen; clear to the mental eye; apparent; manifest." 1 Webster (unpaginated). Webster gives a legal example: "The guilt of an offender cannot always be made *evident*." (Emphasis in original.)

Webster defines a "presumption" as the "[s]upposition of the truth or real existence of something without direct or positive proof of the fact, but grounded on circumstantial or probable evidence which entitles it to belief." 2 Webster (unpaginated). Webster cites William Blackstone's discussion of "presumptions," which describes them as "circumstantial evidence" and an alternative to "positive proof." 3 William Blackstone, *Commentaries on the Laws of England* *371 (1768). Blackstone there wrote:

> "[N]ext to *positive* proof, *circumstantial* evidence or the doctrine of *presumptions* must take place: for when the fact itself cannot be demonstratively evinced, that which comes nearest to the proof of the fact is the proof of such circumstances which either *necessarily,* or *usually*, attend such facts; and these are called presumptions, which are only to be relied upon till contrary be actually proved. * * * *Violent* presumption is many times equal to full proof; for there those circumstances appear which *necessarily* attend the fact. * * * *Probable* presumption, arising from such circumstances as *usually* attend the fact, hath also its due weight[.] * * * *Light*, or rash, presumptions have no weight or validity at all."

*Id.* at *371-72 (emphasis in original; footnotes omitted). In that passage, Blackstone used the adjective "violent" to indicate that the presumption is "strong" or has some quality "in such a degree as to produce a very marked or powerful effect."[6] *See* 12 *Oxford English Dictionary* 222 (1933) (providing those meanings of "violent").

---

[6] Other sources make this definition of "violent presumption" explicit. *See* 2 Benjamin Vaughan Abbott, *Dictionary of Terms and Phrases Used in American or English Jurisprudence* 636 (1879) (defining "violent presumption" as "[a] strong presumption; a presumption of such a nature as almost to amount to proof"); James A. Ballentine, *Law Dictionary with Pronunciations* 1342 (1930) (defining "violent presumption" as a "presumption which is very strong and forcible, although not necessarily a conclusive or irrebuttable one").

The foregoing suggests that the "proof is evident" when there is plain or direct evidence of the defendant's guilt—evidence that, in Blackstone's words, is "positive," rather than "circumstantial." In the absence of such direct evidence, the defendant's likely guilt may be based on a "violent" or "strong" presumption, one grounded on circumstantial evidence worthy of credit. That evidence must be of circumstances that "necessarily" or "usually" would attend defendant's guilt; that is, circumstantial proof that would give rise to a strong presumption. A strong presumption provides an inference that can "be relied upon till the contrary be actually proved." Article I, section 14, thus allows a person charged with murder to be held without bail when the "proof is evident"—when there is *direct* evidence of guilt—or the "presumption strong"—when *circumstantial* evidence strongly indicates the accused's guilt.

While the text of Article I, section 14, shows that the framers of the provision wanted to establish a high threshold of proof before a person could be held without bail, even when charged with murder, the words themselves do not suggest any limit on the kind of evidence that would be admissible in a proceeding to determine whether to allow bail.

We turn to the history of Article I, section 14. The framers took the provision from Article I, section 17, of the Indiana Constitution of 1851.[7] Charles Henry Carey, *The Oregon Constitution* 468 (1926). No useful information regarding the intended meaning of the provision appears in the records of the constitutional convention. *See* Claudia Burton and Andrew Grade, *A Legislative History of the Oregon Constitution of 1857—Part I*, 37 Willamette L Rev 469, 526 (2001) (describing paucity of record). The background of the bail provision in other jurisdictions, however, provides some insight into the goals of the framers.

At common law, all offenses, including capital felonies, were bailable. *See Ex Parte Bryant*, 34 Ala 270 (1859) (discussing common law); *State v. Hill*, 5 SCL 89 (3 Brev)

---

[7] Article I, section 17, of the Indiana Constitution of 1851 provided, in part: "Offences, other than murder or treason, shall be bailable by sufficient sureties. Murder or treason, shall not be bailable, when the proof is evident or the presumption strong."

(1812) (same). Many early state constitutions, however, limited the discretion of judges to allow bail in cases of murder and treason. *See, e.g.*, Ala Const, Art I, § 17 (1819) ("All persons shall, before conviction, be bailable by sufficient sureties, except for capital offenses, when the proof is evident, or the presumption great[.]"); Miss Const, Art II, § 24 (1875) ("[A]ll persons shall be bailable by sufficient sureties, except for capital offenses when the proof is evident or the presumption great."); Ohio Const, Art VIII, § 12 (1802) ("all persons shall be bailable by sufficient sureties, unless for capital offenses, where the proof is evident or the presumption is great"); Pa Const, Art IX, § 14 (1790) ("[A]ll prisoners shall be bailable by sufficient sureties unless for capital offences, when the proof is evident or presumption great[.]"); Northwest Ordinance, Art 2 (1787) ("All persons shall be bailable, unless for capital offenses, where the proof shall be evident or the presumptions great."); NC Const, § 39 (1776) ("All prisoners shall be bailable by sufficient sureties, unless for capital offences when the proof is evident or the presumption great."); Massachusetts Body of Liberties (1641) ("No man['Js person shall be restrained or imprisoned by any authority whatsoever, before the law hath sentenced him thereto, if he can put in sufficient securitie, bayle or mainprise, for his appearance, and good behavior in the meane time, unlesse it be in Crimes Capitall, and Contempts in open Court, and in such cases where some expresse act of [the legislature] doth allow it[.]").

Early cases applying those provisions split over whether the fact that a grand jury had returned an indictment was sufficient proof to deny bail. Some courts held that an indictment was sufficient proof. *See, e.g., Hight v. United States*, Morris 407 (Iowa Terr 1845) (indictment is strongest possible evidence of guilt before trial). Others gave the indictment some weight, but allowed the defendant to offer proof to rebut the presumption that the indictment established. *See, e.g., Ex Parte White*, 9 Ark 222 (1848) ("It is true, as a general rule, that an indictment raises no presumption against the indictee as to his guilt of the crime charged against him; but this does not prove that it does not raise presumption for all the purposes of his capture and custody, and that for such purposes it is perfectly conclusive till rebut[t]ed."). Still other

appellate decisions approved trial court review of other evidence along with the indictment. *See, e.g., Bryant*, 34 Ala at 276-77 (court must review evidence offered and apply constitutional standard).

As with our examination of the text of Article I, section 14, our review of similar provisions in other state constitutions and early cases interpreting them suggests that those provisions imposed no particular limitations on the kind of proof that a court could consider in determining whether or not a defendant in a murder case was bailable.

We turn to this court's prior cases. As noted previously, this court construed Article I, section 14, in *Connall*. In addition to the holding—later rejected in *Haynes*—that the state need show only a "fair likelihood" that the defendant would be convicted of murder, *Connall* also considered the role of the grand jury indictment in the decision to deny bail. On that issue, this court agreed with the defendant that a grand jury indictment, standing alone, was insufficient proof to support a decision to deny bail. 258 Or at 435. The court in *Connall* did not review the history or text of Article I, section 14, in detail, but it relied on the reasoning and result in a New Jersey case, *State v. Konigsberg*, 33 NJ 367, 164 A2d 740 (1960), and held that the indictment was not conclusive or even *prima facie* evidence sufficient to deny bail under the constitutional standard. *Connall*, 258 Or at 431-35.

The court in *Connall* held that, in addition to the indictment, the state was required to offer "[o]ther competent evidence."[8] *Connall*, 258 Or at 435. The court did not describe what evidence, other than the indictment, would be admissible in a bail hearing. However, in describing the indictment itself—a document that would not be admissible evidence in

---

[8] *State v. Konigsberg*, 33 NJ 367, 164 A2d 740 (1960), held that "competent" evidence was required, and, although it did not discuss what evidence would be "competent," it suggested that affidavits from witnesses would have been sufficient. *Id.* at 747. *Konigsberg* also held that a prosecutor's statements about what the evidence would show were inadmissible hearsay, but *Connall* did not rely on or purport to adopt that holding, as it was not necessary to the decision in *Connall*. The New Jersey Supreme Court subsequently overruled the holding in *Konigsberg* that hearsay was inadmissible in bail hearings. *See State v. Engel*, 99 NJ 453, 466, 493 A2d 1217 (1985) (holding that, in bail hearing in capital murder case, hearsay evidence in form of codefendant's confession may be considered in decision whether to deny bail).

a criminal trial—as "competent" evidence in a bail hearing, the court necessarily rejected the view that a trial court can deny bail only on the basis of evidence that would be admissible at trial. *Connall* thus recognized that evidence may be "competent" for a bail hearing, even if it would not be admissible at a criminal trial.

In *Haynes*, this court revisited the issue of the sufficiency and nature of the evidence required to meet the constitutional standard that pretrial release not be denied unless the proof of a defendant's guilt was evident or the presumption strong. *Haynes* did not address the specific issue presented in this case: whether the trial court in a pretrial release hearing may rely on hearsay evidence that would be inadmissible in the defendant's criminal trial. However, the court discussed in more general terms the nature of the trial court's inquiry in a pretrial release hearing, a discussion that sheds some light on the kind of evidence on which a pretrial release decision may be based. The court held that it was error for the trial court to rely on the prosecutor's "assertions about evidence that he 'feels' he 'may be able to introduce' " because such assertions are not "proof." *Haynes*, 290 Or at 89. The court stated:

> "The magistrate must be shown information at the hearing from which he can make his own independent determination whether there is admissible evidence against an accused that adds up to strong or evident proof of guilt.
>
> "* * * * *
>
> "[T]he question is * * * whether this court can assume that the circuit court has reached an independent judgment that evidence which will be admissible at trial, unless met or explained, so strongly shows the accused guilty of murder that the law forbids her pretrial release on adequate security conditions."

*Id.*

Although this court criticized the trial court's reliance on comments by the prosecutor about the evidence that he might be able to introduce at trial, it determined from its own review of the record that it could not "say that a judge could not reasonably consider the evidence of plaintiff's guilt

to be strong," *id.* at 85, and held that the defendant was not entitled to pretrial release. *Id.* The evidence in the record to which the court adverted included hearsay testimony implicating the defendant, the conviction of one codefendant, and the guilty plea of another codefendant. That is, much of the evidence that the court relied on in denying pretrial release in *Haynes* was hearsay testimony that would not itself have been admissible in a criminal trial.[9] However, from that information, the court permissibly determined that "evidence which *will be* admissible at trial" so strongly showed the defendant's guilt that pretrial release could be denied. *Id.* at 89 (emphasis added).

Despite defendant's best efforts to expand the reach of *Haynes*, that case does not support defendant's view that hearsay testimony is inadmissible in a pretrial release hearing. As noted above, while *Haynes* held that a prosecutor's representations about what the prosecutor "fe[lt]" he "could" introduce, standing alone, did not meet the constitutional requirement, this court itself reviewed hearsay evidence that would not have been admissible at trial and reached its own conclusion that pretrial release properly was denied. Defendant focuses on this court's statement in *Haynes* that the trial judge must be able to determine "whether there is *admissible* evidence against an accused that adds up to strong or evident proof of guilt." 290 Or at 89 (emphasis added). However, the court in *Haynes* used the word "admissible," not as a description of the evidence permitted at the pretrial release hearing, but rather as a forward-looking description of the kind of evidence that the trial judge must determine the state is likely to be able to introduce at trial. *See id.* ("the circuit court" must "reach[ ] an independent judgment that evidence which *will be* admissible at trial" meets the constitutional standard) (emphasis added). And the court distinguished that "admissible" evidence from the "information" that the trial court may consider at the pretrial

---

[9] The evidence is summarized in the parties' briefs. *Haynes v. Burks*, 2808 Oregon Briefs, Tab 6 (1980). Although this court's decision did not discuss the evidence in the record on which it based its decision to deny pretrial release, the defendant-relator had argued that much of the evidence was hearsay and should not have been considered. (Brief at 19-20.) This court implicitly rejected that argument and instead relied on the test articulated above.

release hearing. For example, nothing in *Haynes* would prevent a trial court from relying on a police officer's identification and summary of a DNA test in a pretrial release hearing even though that evidence is hearsay, *if* the court is able to determine that the state likely will be able to introduce the DNA test at trial with the proper foundation. Conversely, if the evidence at the pretrial release hearing turned on the hearsay statement of a witness whose testimony would implicate the defendant, but also showed that the witness had fled the country and would not be available for trial, the state may well be unable to meet its constitutional burden.

As discussed above, the text and history of Article I, section 14, and our cases interpreting that provision, place the burden on the state at the pretrial release hearing to present evidence, direct or circumstantial, from which the trial court can make an independent determination that evidence that likely will be admissible at trial shows that the proof of defendant's guilt is "evident" or the "presumption strong"; however, that provision does not preclude the state from making that showing by means of hearsay evidence.

■   With that understanding of the relevant legal requirements, we return to the evidence offered by the state at defendant's pretrial release hearing. The state's evidence consisted not just of an indictment or of representations by a prosecutor, but of detailed testimony by the detective in charge of the murder investigation. The detective did not simply state conclusions regarding the evidence against defendant, but identified specific witnesses and the substance of their statements to the police. That information tended to show that defendant knew the victim; that defendant appeared at a hospital emergency room with a stab wound in his leg on the same day that the victim was stabbed; that defendant provided inconsistent stories regarding how he was injured; that multiple witnesses implicated defendant in the victim's death; and that blood found on defendant's shoes was that of the victim.

■   Defendant cross-examined the detective on a variety of issues, including the number and status of various witnesses, his reasons for believing certain witnesses, and alternative theories regarding the victim's death. It is true, as

defendant argues, that his ability to test the state's evidence was limited because much of that evidence was introduced as hearsay. The issue under Article I, section 14, however, is not whether defendant had the same opportunity to test the state's evidence that he will have at trial, but instead whether the evidence met the requirements of the constitutional standard that we discussed above. Although much of the detective's evidence was hearsay, he described witnesses whose testimony likely would be admissible at trial and documentary evidence that, with the proper foundation, likely would be admissible at trial. On the record here, the trial court had sufficient information to make an independent determination that evidence that would be admissible at trial demonstrated that the "presumption" of defendant's guilt was "strong." The trial court applied the correct constitutional and statutory standards when it evaluated the evidence presented and denied defendant's motion for pretrial release.

A person seeking habeas corpus relief must demonstrate that his imprisonment or restraint is illegal. ORS 34.310. For the reasons described above, defendant has not met that burden.

Petition for writ of habeas corpus dismissed.