STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v.
WILLIAM ENGEL AND HERBERT ENGEL,
DEFENDANTS-RESPONDENTS.

Argued May 7, 1985—Decided June 13, 1985.

454

*Dennis Calo,* First Assistant Prosecutor, argued the cause for appellant (*Larry J. McClure,* Bergen County Prosecutor, attorney).

*Miles Feinstein* argued the cause for respondents (*Feinstein, Bitterman, and Schey,* attorneys for William Engel; *William T. Petrina,* attorney for Herbert Engel).

*Debra L. Stone,* Deputy Attorney General, argued the cause on behalf *amicus curiae* Attorney General (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney).

*Matthew Astore,* Assistant Deputy Public Defender, argued the cause on behalf of *amicus curiae* Public Defender (*Thomas S. Smith, Jr.,* Acting Public Defender, attorney).

The opinion of the Court was delivered by

HANDLER, J.

In this case two defendants are charged with the commission of murder by contract. They seek to be released on bail. We must decide whether, and under what evidentiary standards, the recorded, extrajudicial confession of a third codefendant, the alleged hired murderer, may be introduced at the bail hearing and given probative incriminatory weight against the other defendants. Because the limited record before us strongly suggests that the commission of the crime constituted capital murder, we must consider the constitutional standards that

govern bail in capital cases and permit bail to be denied in such cases if the "proof is evident or presumption great." *N.J. Const.* of 1947, art. I, para. 11. Consideration of the issue calls for the reexamination of our decisions that have dealt with the broad question of the standards of admissible evidence at bail hearings in capital cases, particularly *State v. Konigsberg,* 33 *N.J.* 367 (1960), and *State v. Obstein,* 52 *N.J.* 516 (1968).

## I.

On January 18, 1985 James McFadden and the brothers William and Herbert Engel were arrested and charged with the December 13, 1984 murder of William Engel's former wife, Xiomara Engel. On January 24, 1985 a bail motion was made on behalf of all three defendants. At this hearing the State submitted proofs in support of its contention that bail should be denied pursuant to Rule 3:26–1(a). This proof consisted of defendant McFadden's confession, a police officer's affidavit placing William Engel at the scene of the crime, and a photograph of William and Xiomara Engel for identification purposes.

McFadden's confession was made to members of the Bergen County Prosecutor's Office on the day of McFadden's arrest. The confession was extensive, consuming two full hours and requiring a transcript of 110 pages. The confession disclosed that McFadden had been hired by the Engel brothers to murder Xiomara and that he had strangled her in William Engel's presence. McFadden recounted his initial meetings with Herbert Engel, who became his employer, Herbert's successful attempts to recruit him to commit the murder, and the discussions during which the murder was planned. He detailed the activities immediately preceding the killing and described his strangulation of Xiomara, in William Engel's presence, in the Engels' warehouse in Englewood, New Jersey. McFadden also revealed the financial arrangements for this murder-for-hire scheme, stating specifically the amount of money that Herbert

Engel had agreed to pay him to murder the woman and the money that Herbert gave him when the murder was accomplished. Finally, McFadden described in a careful sequence each of the steps taken to dispose of the corpse. He disclosed that he had asked a friend, whom he named, to drive with him to his family home in South Carolina with the body and how this friend had doused the car and the victim's body with gasoline and set them afire.

This confession is highly inculpatory both as to McFadden and the Engel brothers. In addition, the State introduced a corroborating affidavit by Engelwood patrolman Timothy Torell that confirmed William Engel's presence in the warehouse at the time of the alleged crime. Further, it does not appear to be disputed, although not made part of the record at the bail hearing, that the South Carolina police found the burned automobile and Xiomara's charred remains on December 14, 1984.

At the bail hearing the voluntariness of McFadden's statement was not questioned. Defense counsel requested that the State produce McFadden as a witness so that he could be subjected to cross-examination. The court, however, found that McFadden's assertion of his fifth amendment privilege to remain silent prevented him from being called as a witness.

On the basis of these submissions, the court found that there was both a likelihood of conviction and reasonable grounds to believe that the death penalty might be imposed upon all three defendants. Accordingly, the court ruled that under Rule 3:26–1(a) the defendants were not entitled to bail.

On March 7, 1985 defendants William and Herbert Engel brought a motion for reconsideration of the bail decisions. Bail was again denied by order dated March 19, 1985. On March 21, 1985 the Engels moved before a single judge of the Appellate Division for emergent bail pending their motion for leave to appeal from the trial judge's denial of bail. This application was also denied.

On April 4, 1985 the Appellate Division granted the Engels' motion for leave to appeal. Relying on *State v. Obstein, supra,* 52 *N.J.* 516, the Appellate Division reversed the trial court's order denying defendants' admission to pretrial bail. It set bail in the amount of $1,500,000 for each defendant and remanded the matter to the trial court for the entry of an appropriate order and for the fixing of any conditions that the trial court might deem appropriate. On April 12, 1985 the Bergen County Prosecutor filed a notice of motion for leave to appeal to this Court. We granted the State's application to stay the Appellate Division's order admitting defendants to bail pending review by the Court. We now grant the State's motion for leave to appeal and reverse and remand.

## II.

The State Constitution prescribes that "All persons shall, before conviction, be bailable by sufficient sureties, except for capital offenses when the proof is evident or presumption great." *N.J.Const.* of 1947, art. I, para. 11. The constitutional provision has been further implemented through our Court Rule, which provides

"All persons, except those charged with crimes punishable by death when the prosecutor presents proof that there is a likelihood of conviction and reasonable grounds to believe that the death penalty may be imposed, shall be bailable * * *." [*R.* 3:26–1(a).]

Although the broad terms employed by the Constitution—"proof is evident" and "presumption great"—are not defined or self-explanatory, they denote that the evidence that is produced at the bail hearing pointing to the commission of the crime of capital murder must be cogent and persuasive. Our Court Rule particularizes this broad constitutional standard by requiring that such evidence demonstrate both "a likelihood of conviction" and "reasonable grounds to believe that the death penalty may be imposed." *R.* 3:26–1(a).

The quantum of evidence necessary to satisfy this standard has been described as a "fair likelihood" of conviction. This

standard of proof reflects the limited nature of the issues to be resolved at a bail hearing. These issues, the likelihood of conviction and the reasonable possibility of the imposition of the death penalty, do not approach the ultimate question of guilt or innocence that is the final objective of the criminal prosecution. Consequently

> [i]n such a framework the just rule for utilization is that bail should be denied when the circumstances disclosed indicate a fair likelihood that the defendant is in danger of a jury verdict of first degree murder. For only in instances where such likelihood exists is his life in jeopardy and the well recognized urge to abscond present. [*Konigsberg*, 33 *N.J.* at 376–77.]

It is also well settled that the burden is on the State to persuade the trial court that a case involves capital murder and that a defendant charged with the murder may consistent with the Constitution be denied bail. *Id.* at 374–75. In determining whether the State has met its burden of proof in this case, we must address the question whether, or to what extent, hearsay evidence in the form of a codefendant's confession may be considered as probative evidence in a bail hearing with respect to defendants charged with capital murder.

Our treatment of hearsay evidence in general for purposes of bail in capital cases has been somewhat uneven. *Konigsberg* would have allowed the introduction of affidavits of witnesses but not the prosecutor's representations of what will be introduced at trial. 33 *N.J.* at 379. However, it is by no means clear that a codefendant's confession would be excludable under *Konigsberg*. We there stressed that the representations of the prosecutor as to what evidence was available and would be offered at trial were inadmissible, because incompetent, at the bail hearing. In *State v. Kehr*, 33 *N.J.* 381 (1960), decided on the same day as *Konigsberg*, the Court reiterated that the representations of the prosecutor as to what proof would be established at trial were incompetent testimony, but ruled that "if the representations of the prosecutor had been submitted in the form of affidavits of the proper and competent witnesses, denial of the application * * * would have been justifiable." *Kehr*, 33 *N.J.* at 383. The case was remanded to give the

prosecutor the opportunity "to introduce proof with the formality now adjudged to be necessary." *Id.*

Later, in *State v. Obstein, supra,* 52 *N.J.* at 523, the Court ruled that affidavits of witnesses are not allowed over the objection of defendant. Nevertheless, in none of the cases did we have the occasion to consider whether and under what evidentiary standards hearsay in the form of the confession of a codefendant may be admissible in a bail hearing in a capital murder case against another defendant.

We acknowledge that if conventional rules of evidence, or even constitutional principles governing the admissibility and use of evidence in the trial of a criminal defendant, were to be applied at a bail hearing, the confession of a codefendant would be inadmissible hearsay as against the defendants whose bail is at issue. *See Evid.R.* 63 (extrajudicial statement offered to prove truth of its content other than by declarant testifying at hearing is excluded as hearsay unless it falls within a defined exception); *see also Bruton v. United States,* 391 *U.S.* 123, 88 *S.Ct.* 1620, 20 *L.Ed.*2d 476 (1968) (confession of codefendant not produced as a witness inadmissible against defendant in criminal trial as violation of constitutional right of confrontation); *State v. Young,* 46 *N.J.* 152 (1965) (same). In this case the critical evidence that has led to the denial of bail is a codefendant's confession. Consequently, the central issue in the case is whether conventional rules of evidence must be applied. If so, the confession must be discounted as admissible evidence; if not, we must then determine whether the codefendant's confession is admissible under any circumstances.

The determination of whether the standard rules of evidence must be applied in a bail hearing requires a critical assessment of the purpose and nature of the hearing itself. This assessment includes a consideration of the issues to be resolved at the bail hearing, the type of criminal prosecution in which the application for bail has arisen and the availability of competent evidence at an early pretrial stage of the prosecution consider-

ing the extent to which the criminal investigation and gathering of evidence has been completed. Ultimately, the court must weigh the State's interest in securing the presence of the defendant for trial and the defendant's interest in personal liberty and the opportunity to defend himself.

We note at the outset that Evidence Rule 2(2) provides that, with certain exceptions, the "rules in this act, or adopted pursuant thereto, shall apply in every proceeding, criminal or civil, conducted by or under the supervision of a court, in which evidence is produced." *Evid.R.* 2(2). That rule, however, has never been understood to require literally that the conventional rules of evidence must be applied strictly in every conceivable judicial proceeding.

Comment 2 to Evidence Rule 2(2), for example, catalogues a number of situations in which the rules of evidence do not apply. *See N.J.Rules of Evidence*, 53, 55–58 (Anno.1985). The rules of evidence do not apply to certain preliminary inquiries, *State v. McCrary*, 97 *N.J.* 132, 145–47 (1984) (to support a prosecutor's decision to seek the death penalty); *State v. Doliner*, 96 *N.J.* 236, 249 (1984) (to grand jury determining whether to return an indictment); *State v. Devatt*, 173 *N.J.Super.* 188, 194 (App.Div.1980) (to proceedings to determine whether to terminate a defendant's participation in a pre-trial intervention program); to juvenile delinquency proceedings to the same extent as in ordinary criminal proceedings, *State in the Interest of W.O.*, 100 *N.J.Super.* 358, 362–63 (App.Div.1968) (to application by juvenile for sequestration of witnesses); to applications by the State for an order permitting the taking of non-testimonial samples of evidence from a person accused of crime, *State v. Burke*, 172 *N.J.Super.* 555, 557 (App.Div.1980) (to evaluate the State's application to take non-testimonial samples of evidence from an accused); and to suppression hearings to determine whether evidence was illegally seized, *State v. Kasabucki*, 52 *N.J.* 110, 116 (1968) (to find probable cause in support of a search warrant).

In addition to these various pre-trial contests, the courts may receive evidence not admissible at trial in numerous post-trial contexts. *See, e.g., State v. Priester,* 99 *N.J.* 123 (1985) (to determine whether inmate is entitled to be released from prison); *State v. Stewart,* 96 *N.J.* 596, 606 (1984) (to determine applicability of the Graves Act); *State v. Davis,* 96 *N.J.* 611, 620 (1984) (to show mitigation in death penalty sentencing trial); *State v. Kunz,* 55 *N.J.* 128 (1969) (to determine background for sentencing purposes); *see also New Jersey Parole Bd. v. Byrne,* 93 *N.J.* 192, 209 (1983) (to determine eligibility for parole); *State v. Humphreys,* 89 *N.J.* 4, 14 (1982) (to determine whether defendant may retain license to purchase a gun after dismissal of criminal charges pertaining to the misuse of firearms); *State v. Fields,* 77 *N.J.* 282, 305–06 (1978) (to determine whether to release from custody a defendant acquitted as insane). Thus, we have recognized in a variety of contexts that the need for flexibility, realism and fairness requires relaxation of the rules of evidence, including specifically the rules governing the admissibility of hearsay evidence.

These examples inform us that strict application of the conventional rules of evidence does not depend simply on whether the proceeding is preliminary to the trial itself or is incidental to a completed criminal prosecution. Rather, they suggest that the standards for the admissibility of evidence depend more on the particular issues that are to be resolved at the ancillary hearing and whether their resolution will have a direct and decisive impact on the ultimate issues that are the focus of the plenary trial.

The grant or denial of bail in no way affects the ultimate issue of guilt or innocence to be resolved at trial. We recognized in *Konigsberg* that a bail hearing was a preliminary proceeding in which the ultimate issue of guilt or innocence was not before the court and emphasized that bail proceedings should not be allowed to affect the outcome of the trial. 33 *N.J.* at 376–77. Guilt or innocence is not the issue; direct

conflicts as to inculpatory and exculpatory facts cannot be resolved. *Id.* This was reiterated in *Obstein:*

> On a bail hearing, guilt or innocence of the accused is not the issue. There can be no evaluation of the evidence with that result in mind. Direct conflicts between inculpatory or exculpatory facts cannot be resolved. Problems of credibility of witnesses, except, perhaps, in extraordinary circumstances, should not be passed upon. Such matters must await jury determination at the trial. [*Obstein,* 52 *N.J.* at 522 (citation omitted).]

Other courts have also viewed bail proceedings as essentially preliminary and not determinative of ultimate rights, thereby allowing greater flexibility in admitting evidence. In *Martinez v. Superior Court,* 26 *Ariz.App.* 386, 548 *P.*2d 1198 (1976), the court held that the transcript of the testimony of witnesses before the grand jury may be considered at a bail hearing, citing *Serrano v. State,* 83 *Nev.* 324, 429 *P.*2d 831 (1967). *See also State v. Menillo,* 159 *Conn.* 264, 268 *A.*2d 667, 676 (1970) ("the bail hearing is not a determination of guilt or innocence but rather a determination of the preliminary issue of the right to reasonable bail"). In *Bates v. Ogata,* 52 *Hawaii* 573, 482 *P.* 2d 153 (1971), the court focused upon the truly provisional aspect of the bail hearing. The court permitted the trial court to consider the testimony of a police officer regarding information obtained from three witnesses; his testimony also reflected personal observations corroborative of the witnesses' statements. After summarizing *Konigsberg* and *Obstein* for the proposition that "[t]he type of evidence which may properly be considered in a bail proceeding, and the sufficiency thereof for a denial of bail, cannot be broadly categorized before-hand," the Hawaii court stated that "in a non jury proceeding, hearsay may support a finding if in the end it is 'the kind of evidence on which responsible persons are accustomed to rely in serious affairs.'" *Bates, supra,* 52 *Hawaii* at 576, 482 *P.*2d at 156 (quoting Judge Learned Hand in *NLRB v. Remington Rand, Inc.,* 94 *F.*2d 862, 873 (2nd Cir.1938), *cert.* den., *Central Executive Council of Remington Rand Employees' Ass'ns v. NLRB,* 304 *U.S.* 585, 58 *S.Ct.* 1061, 82 *L.Ed.* 1546 (1938)).

While a consideration of the limited nature of the issues to be resolved at a bail hearing militates strongly in favor of relaxed rules of evidence, many courts have stressed the competing interests at stake in such a hearing. The bail hearing itself poses a threat to defendant's liberty. The use of hearsay also clearly implicates a defendant's basic right of confrontation. It is, then, necessary to determine whether the right of cross-examination is essential, either in terms of a constitutional right in the defendant or as a necessary basis for the determination of the probative worth of evidence that can threaten a defendant's liberty.

Although the right of confrontation and the hearsay rule are not co-extensive, the underlying policies of the hearsay rule and the confrontation clauses are similar: to ensure the accuracy of the factfinding process by excluding untrustworthy statements, such as those made without the solemnity of the oath, and not subject to cross-examination by the accused or the jury's critical observation of the declarant's demeanor and tone. Some states have emphasized the defendant's interest in liberty and have held that evidence presented in bail proceedings must be admissible under conventional rules of evidence. *See Young v. Russell*, 332 *S.W.*2d 629, 633 (Ky.1960) (the evidence that may be considered on the hearing of a motion involving admissibility to bail is limited to "legal" evidence, *i.e.*, "competent under the ordinary rules of evidence," so as to exclude direct use of the grand jury transcript and other pure hearsay); *Marcum v. Broughton*, 442 *S.W.*2d 307, 309 (Ky.1969) (same); *Chynoweth v. Larson*, 572 *P.*2d 1081, 1083 (Utah 1977) (the Utah Rules of Evidence are applicable to and controlling at bail hearings); *cf. In re Smith*, 326 *P.*2d 835, 838 (Okla.Crim.App.1958) (court rejected *ex parte* affidavits without cross-examination because they were inadequate to present petitioner's defense at bail application hearing). A Florida court emphasized the adversarial nature of bail proceedings, inducing that court to be particularly solicitous of the defendant's rights of confrontation and

cross-examination. *See Stansel v. State,* 297 *So.*2d 63, 65 (Fla.Dist.Ct.App.1974).

We also acknowledge the significant right of liberty that is at stake at a bail hearing and have evinced a rather strict attitude as to the admission of hearsay evidence. As already noted, *Konigsberg* rejected the notion that admission to bail could be denied on the basis of representations by the prosecutor as to what evidence he would later introduce at trial. In *Obstein,* the Court held that *ex parte* affidavits could not be used to support the prosecutor's opposition to the defendant's admission to bail unless the defendant expressly consented to their use. *Obstein, supra,* 52 *N.J.* at 523.

■ It does not follow that hearsay evidence in the form of a codefendant's confession must necessarily be excluded from a bail hearing in order to safeguard the defendant's liberty. There is an important qualitative difference in the threat to liberty that is posed by a bail hearing and that occasioned by the criminal trial itself. The denial of liberty in the former is not attended by a determination of criminal guilt, and, therefore, is not permanent or indefinite. Liberty may be restored by admission to bail upon an adequate showing. At the trial, however, the defendant's loss of liberty is based upon a criminal conviction and is permanent.

Furthermore, while our prior decisions are generally understood to preclude the use of such hearsay,[1] we have also recognized that not all of the infirmities that attend the use of

---

[1] The procedural standards that have been extrapolated from *Obstein* have generally governed the allowance of bail in capital cases. Section 6(3) to (5) of the New Jersey *Judge's Bench Manual for Capital Cases* accepts the limitations *Obstein* puts on the use of affidavits in bail hearings, *i.e.,* that they may be used by the prosecutor to oppose admission to bail only with the consent of the accused, that the prosecutor must produce live witnesses if the defendant does object, and that the defendant has the right of cross-examination at the hearing. We note, in passing however, that the requirement that a bail hearing be held *in camera* has been superseded by a standard generally calling for public hearings. *State v. Williams,* 93 *N.J.* 39 (1983).

hearsay are implicated in a bail hearing. In *Konigsberg* we noted that the credibility of evidence would not generally be relevant at a bail hearing. 33 *N.J.* at 377. We have already stressed that guilt or innocence is not in issue. *Id.* at 376; *supra* at 463.

■ For these reasons, the right to confrontation is appropriately regarded as essentially a trial right, rather than one that attaches to ancillary hearings to determine limited questions, the resolution of which do not significantly affect the outcome of the trial. *See Barber v. Page,* 390 *U.S.* 719, 725, 88 *S.Ct.* 1318, 1322, 20 *L.Ed.*2d 255, 260 (1968). Neither the federal nor State Constitution grants defendants a right to confront witnesses at a bail hearing. *See Bates v. Ogata, supra,* 52 *Hawaii* at 155, 482 *P.*2d 153. That right attaches at the trial itself, see *Bruton v. United States, supra,* 391 *U.S.* 123, 88 *S.Ct.* 1620, 20 *L.Ed.*2d 476; *State v. Young, supra,* 46 *N.J.* 152, but its force does not carry over to other ancillary criminal proceedings. Thus, a defendant does not have a right *per se* to insist upon the opportunity for cross-examination at a bail hearing.

■ Our task then is to determine whether it is possible to develop adequate standards that can guarantee that hearsay evidence proffered at a bail hearing is sufficiently reliable to constitute a reasonable substitute for the right of confrontation and an appropriate protection of the defendant's liberty. At the plenary trial, the accuracy and ultimate integrity of the fact-finding process is so overriding that the confrontation right ordinarily prevails in a contest between that right and an opponent's proffer of relevant hearsay. *See Pointer v. Texas,* 380 *U.S.* 400, 85 *S.Ct.* 1065, 13 *L.Ed.*2d 923 (1965); *State v. Pontery,* 19 *N.J.* 457 (1955); *State v. Crudup,* 176 *N.J.Super.* 215 (App.Div.1980). *Cf. Chambers v. Mississippi,* 410 *U.S.* 284, 93 *S.Ct.* 1038, 35 *L.Ed.*2d 297 (1973) (due process and right of confrontation denied when state court refused to allow defendant to use hearsay in the form of prior inconsistent statement to impeach credibility of his witness due to "voucher" rule).

Even at trial, however, hearsay may be admissible if the proponent shows that the declarant is unavailable and that the statement falls within a "firmly rooted hearsay exception" or that the statement is marked with such "particularized guarantees of trustworthiness" that it comports with the substance of the constitutional protection. *See Ohio v. Roberts,* 448 *U.S.* 56, 66, 100 *S.Ct.* 2531, 2539, 65 *L.Ed.*2d 597, 608 (1980) (allowing the use at trial of a prior statement made by an unavailable witness under oath and subject to *de facto* cross-examination at a preliminary hearing); *see also Mancusi v. Stubbs,* 408 *U.S.* 204, 92 *S.Ct.* 2308, 33 *L.Ed.*2d 293 (1972); *California v. Green,* 399 *U.S.* 149, 90 *S.Ct.* 1930, 26 *L.Ed.*2d 489 (1970) (both cases allowing the admission of prior statements, given under oath and subject to cross-examination at the time they were made, in later trials in which the declarants were unavailable to testify).

 We now hold that at a bail hearing involving a defendant's admission to bail a codefendant's confession can be considered if (1) the confession is more probative on the point for which it is offered than any other evidence that the State can procure through diligent efforts under all of the circumstances; and (2) the confession itself is sufficiently trustworthy or circumstantial corroboration of the confession renders it sufficiently trustworthy.

 In applying these tests to determine whether a hearsay statement in the form of a codefendant's confession sought to be admitted is sufficiently trustworthy for the limited purposes of a bail hearing, judicial discretion must be exercised cautiously. Several considerations should guide the exercise of this discretion. The main factor that would tend to support a finding of trustworthiness is whether, considering the confession as a whole, a comparison of the strengths of the declarant's self-serving interest and the disserving interest shows that the disserving interest preponderates. *See E. Cleary, McCormick on Evidence,* § 279 at 677 (2d ed. 1972); *cf. Evid.R.* 63(10) (statement against penal interest); *Fed.R.Evid.*

804(b)(5) (residual hearsay exception); *State v. Powers*, 72 *N.J.* 346 (1977) (per curiam) (Clifford, J., dissenting) (a specific requirement of the hearsay exception for statements against penal interest is that at the time it was made, the statement so far subjected the declarant to criminal liability that a reasonable man in his position would not have made it unless he believed it to be true); *Laumer v. United States*, 409 *A.*2d 190 (D.C.App.1979) (en banc) (analyzing, in trial context, whether corroborating circumstances clearly indicate trustworthiness of statement and the extent to which the declaration was against the declarant's penal interest); *State v. Parris*, 30 *Wash.App.* 268, 633 *P.*2d 914 (1981), 98 *Wash.*2d 140, 654 *P.*2d 77 (1982) (statement admissible at trial if it so far tends to subject declarant to criminal liability, even considering his inculpatory statements as to his codefendant(s), that a reasonable person in his position would not have made the statement unless it were true and statement is corroborated by circumstances clearly indicating its trustworthiness); *United States v. Bailey*, 581 *F.* 2d 341 (3rd Cir.1978) (analyzing and rejecting circumstantial guarantees of trustworthiness offered to support admission of codefendant's confession at trial).

A statement's internal consistency may also suggest that it is true. *Cf. Robertson v. Hackensack Trust Co.*, 1 *N.J.* 304, 312 (1949) ("the admissibility of the proofs as *res gestae* has as its justifying principle that truth, like the Master's robe, is of one piece, without seam, woven from the top throughout, that each fact has its inseparable attributes and its kindred facts materially affecting its character, and that the reproduction of a scene with its multiple incidents, each created naturally and without artificiality and not too distant in point of time, will by very quality and texture tend to disclose the truth"); *State v. Melson*, 638 *S.W.*2d 342 (Tenn.1982), *cert.* den. *sub nom. Melson v. Tennessee*, 459 *U.S.* 1137, 103 *S.Ct.* 770, 74 *L.Ed.*2d 983 (1983) (innocuous tidbits gleaned from isolated citizens did not need to be independently corroborated when fit together to reveal a picture of criminal activity). Other factors bearing on

trustworthiness may include whether the statement was made under oath, *see United States v. Bailey, supra,* 581 *F.*2d 341; *United States v. White,* 611 *F.*2d 531 (5th Cir.), *cert.* den., 446 *U.S.* 992, 100 *S.Ct.* 2978, 64 *L.Ed.*2d 849 (1980) (mem.); *United States v. Carlson,* 547 *F.*2d 1346 (8th Cir.1976), *cert.* den., 431 *U.S.* 914, 97 *S.Ct.* 2174, 53 *L.Ed.*2d 224 (1979); *United States v. Barlow,* 693 *F.*2d 954 (6th Cir.1982), *cert.* den., 461 *U.S.* 945, 103 *S.Ct.* 2124, 77 *L.Ed.*2d 1304 (1983); and the duration of the time lapse between the event and statement, *see United States v. Medico,* 557 *F.*2d 309 (2d Cir.), *cert.* den., 434 *U.S.* 986, 98 *S.Ct.* 614, 54 *L.Ed.*2d 480 (1977) (lapse of five minutes); *United States v. Iaconetti,* 406 *F.Supp.* 554 (E.D.N.Y.), aff'd, 540 *F.*2d 574 (2d Cir.1976), *cert.* den., 429 *U.S.* 1041, 97 *S.Ct.* 739, 50 *L.Ed.*2d 752 (1977) (same day); *United States v. White, supra,* 611 *F.*2d 531 (three months), although the oath and spontaneity of the statement alone would be insufficient to render a confession by a non-testifying codefendant sufficiently trustworthy to be admissible at a bail hearing.

■ If a confession reflects such factors, which enhance its probative worth, a court may reasonably conclude it is sufficiently trustworthy to be used as evidence for bail hearing purposes. However, if the court is not satisfied upon a consideration of these factors that the confession is sufficiently trustworthy, it may allow or require the prosecutor to establish or bolster the trustworthiness of the confession through circumstantial corroboration. Corroborating evidence may be offered to substantiate various parts of a statement and thereby reduce the doubt that may otherwise attend its veracity. *See State v. Ordog,* 45 *N.J.* 347, 364 (1965), *cert.* den., 384 *U.S.* 1022, 86 *S.Ct.* 1942, 16 *L.Ed.*2d 1025 (1966), and *State v. Rush,* 45 *N.J.* 347, 364 (1965), *cert.* den. *sub nom. Rush v. New Jersey,* 384 *U.S.* 1022, 86 *S.Ct.* 1945, 16 *L.Ed.*2d 1025 (1966); *State v. Fauntleroy,* 36 *N.J.* 379, 399 (1962); *State v. Johnson,* 31 *N.J.* 489, 502–03 (1960); *State v. Krieger,* 193 *N.J.Super.* 568, 575 (1983), rev'd on dissent below, 96 *N.J.* 256, *cert.* den. *sub nom. Krieger v. New Jersey,* —— *U.S.* ——, 105 *S.Ct.* 431, 83 *L.Ed.*2d

358 (1984). If corroboration is deemed necessary by a court at a bail hearing, the standard should parallel that applicable in determining the admissibility of an extrajudicial confession at a criminal trial. This calls for "independent proof of facts and circumstances which strengthen or bolster the confession and tend to generate a belief in its trustworthiness * * *." *State v. Lucas*, 30 *N.J.* 37, 56 (1959).

In addition to demonstrating at the bail hearing that there is a likelihood of conviction, the State, as noted earlier, also has the burden under Rule 3:26–1(a) to establish that there are reasonable grounds to believe that the death penalty may be imposed. Under our current law defining capital murder and authorizing the death penalty, it must be shown that there are aggravating factors that militate in favor of capital punishment. *N.J.S.A.* 2C:11–3(c)(4)(a–h). The bail hearing, however, is not an appropriate proceeding in which to grapple with the issue of whether the penalty of death is to be imposed. Just as the question of criminal guilt or innocence is reserved for the jury at the trial, so the ultimate penalty to be meted in a case of capital murder—death or imprisonment for life—must await the sentencing trial itself. As with the ultimate question of guilt or innocence, the only evidence that may be allowed at the bail hearing is that which plausibly foreshadows the imposition of the death penalty at the conclusion of the criminal trial itself.

Accordingly, we conclude that at a bail hearing in a case of capital murder, the court must determine whether an aggravating factor exists that, if credited and accepted by a jury at the sentencing phase of the capital murder trial, would allow it to impose the death penalty. If the court determines that such an aggravating factor exists, that will constitute reasonable grounds for believing that the death penalty may be imposed under Rule 3:26–1(a). *See State v. McCrary, supra,* 97 *N.J.* 132 (evidence of aggravating factor for purposes of notifying defendant that case involves capital murder under *N.J.S.A.* 2C:11–3(c)(2) need be no greater than that necessary to with-

stand a motion to dismiss indictment). In addressing this issue, the court may admit hearsay evidence in the form of a codefendant's confession. We stress, however, that consideration of such hearsay evidence shall be governed by the same standards that we have prescribed for its use for purposes of determining the likelihood of a conviction under Rule 3:26–1(a).

We address a final point in terms of the burden of proof that is on the State under Rule 3:26–1(a). If in a case of capital murder the State seeks to establish a likelihood of conviction at the bail hearing by relying on the hearsay confession of a codefendant, we believe as a matter of fundamental fairness that the liberty of the defendant demands protection in addition to the safeguards we have now prescribed governing the admissibility of such hearsay.

As already stated, the State is required to show that the proffered hearsay is the most probative evidence available and that it is trustworthy. We hold further that the State must make a reasonable showing that the substance of the proffered hearsay will in some competent form be available for use at the defendant's trial. In the absence of some showing that there is a likelihood that the substance of the proffered hearsay can be used against the defendant at trial, it is hard to fathom how the State will have sustained its burden of demonstrating that the defendant is in genuine danger of being convicted. To allow hearsay that could not in any likelihood be used at the defendant's trial to be introduced and considered at the bail hearing to deny the defendant his liberty would be unfair.

We determine therefore that the prosecutor will have the burden at the bail hearing to show that there is a likelihood that the substance of the hearsay evidence, by virtue of an exception to the hearsay rule or in some other competent form, will be admitted and used at the trial. This may be done by testimony or credible representations to the court through responsible

representatives authorized to advance the State's position in terms of the handling of the criminal prosecution. The court should consider such testimony or representations in the context of the entire criminal investigation and prosecution. In this connection, it must consider the timing of the bail hearing, the reasons for the prosecutor not producing the affiant or declarant or other persons with direct knowledge of the contents of the hearsay evidence, and the steps that the prosecutor has taken or will be taking to overcome the nonproduction of such witnesses and to provide for their availability at trial. The court's consideration as to whether there is a likelihood that the hearsay evidence in some admissible form will be presented at the defendant's trial for capital murder must then be included in its overall determination of whether defendant should be denied bail under Rule 3:26–1(a). We add that if on such a showing the court were to deny bail, the defendant would of course have the continuing right to reapply for bail.

### III.

It is our holding that in a bail hearing in a case of capital murder, hearsay evidence in the form of a codefendant's confession may be considered in determining whether the State has met its burden under Rule 3:26–1(a) to demonstrate that the defendant should be denied bail. We recognize that this holding differs from and goes beyond the holdings of our prior decisions, particularly *State v. Konigsberg, supra,* 33 *N.J.* 367, and *State v. Obstein, supra,* 52 *N.J.* 516. Accordingly, the holdings of these cases are modified and overruled to the extent rendered necessary by this decision. We are required therefore to consider the application of these standards to the case on appeal. The central question is whether McFadden's confession, which is inculpatory as to him as well as the two codefendants, is admissible at the Engels' bail hearing when McFadden refuses to testify.

Our review of the record indicates that McFadden's confession, upon an appropriate assessment by the trial court, could be considered sufficiently trustworthy for bail purposes. It appears from the present record that McFadden's confession is the most probative evidence that the State currently has on the point of the defendants' commission of the murder-for-hire crime. There is no suggestion that better evidence could be produced by greater diligence.

The record also indicates that the confession itself is trustworthy. Defendants have conceded its voluntariness. *See State v. Tucker*, 101 *N.J.Super.* 380 (Law Div.1968) (at bail hearing in capital case, state need only demonstrate by prima facie proof that requirements of *Miranda v. Arizona*, 384 *U.S.* 436, 86 *S.Ct.* 1602, 16 *L.Ed.*2d 694 (1966), were met before defendant signed statement in order to permit consideration of that statement). The confession was made shortly after the commission of the crime; it was made under oath and transcribed. The disserving elements of the confession are abundantly strong and, while the self-serving factor of McFadden's cooperation with the State with respect to the Engels' trials may be present, it appears to be outweighed by the extreme penalty to which McFadden has subjected himself. Additionally, the statement's internal consistency and detail suggest its truthfulness. The declarant's statement was based on direct knowledge and is extensive in its details. It contains numerous references to extrinsic circumstances that appear to be amenable to verification or corroboration. In one detail, for example, there was corroboration: the State offered evidence that a police officer observed one of the Engel brothers at the approximate time and place the murder allegedly occurred. The confession considered in terms of its contents and against the totality of all the surrounding circumstances generates a strong inference that the declarant is not lying or fabricating. It does not appear that defendants' ability to cross-examine McFadden is indispensable to a reasoned determination that the confession

has sufficient probative worth to demonstrate a likelihood that defendants will be convicted of the crime of capital murder.

We nevertheless conclude that the matter should be remanded. It is the trial court that should properly make the sensitive factual findings that are required in determining the issues under Rule 3:26-1(a). The lower court should resolve in the first instance whether the proffered confession is the most probative evidence available as to the commission of the crime of capital murder. The trial court itself should determine the trustworthiness of the confession, including the need for corroboration as this may bear upon the trustworthiness of the confession. Finally, the trial court must consider whether the prosecutor can demonstrate that it is likely the substance of the confession will be used at defendants' trial either as hearsay under an appropriate exception or in some other competent form of evidence. All of these determinations must inform the trial court whether under Rule 3:26-1(a) there is a likelihood of the defendants' conviction at trial and reasonable grounds exist to believe that the death penalty may be imposed. If the court concludes that the State has met its burden in this respect, it may properly deny defendants' admission to bail.

## IV.

Accordingly, the judgment of the Appellate Division is reversed and the matter remanded to the trial court to reconsider defendants' application for bail under the principles set forth in this opinion. Pending that court's determination, its order denying bail is reinstated.

*For reversal and remandment* —Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed* —None.