# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0736-23

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

HOSEA R. JACKSON,

     Defendant-Appellant.

_____

> Argued April 1, 2025 – Decided May 27, 2025
>
> Before Judges Gilson, Firko, and Augostini.
>
> On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 19-03-0571.
>
> Rachel A. Neckes, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Rachel A. Neckes, of counsel and on the briefs).
>
> Matthew T. Mills, Assistant Prosecutor, argued the cause for respondent (William E. Reynolds, Atlantic County Prosecutor, attorney; Matthew T. Mills, of counsel and on the brief).

PER CURIAM

A jury convicted Hosea R. Jackson of third-degree criminal restraint, N.J.S.A. 2C:13-2(a), and fourth-degree criminal sexual contact, N.J.S.A. 2C:14-3(b). Thereafter, defendant was sentenced to three years of probation. Defendant appeals from his convictions. Because the State should not have been allowed to use defendant's statements to the police and because of other errors at trial, we reverse his convictions and remand for further proceedings.

I.

The charges against defendant were based on allegations made by M.O. (Mary), a housekeeper at a hotel in Atlantic City.[1] We discern the facts from the record, including the testimony and evidence introduced at the Rule 104 hearing and at trial.

On July 30, 2018, Mary reported that defendant, who was staying at the hotel, had sexually assaulted her in his room. Police officers Robert Reynolds and George Mancuso responded to the hotel to investigate the incident. Their interactions were captured on Reynolds' body-worn camera, which included audio recordings.

---

[1] We use initials and a fictitious name for the victim to protect her privacy interests. R. 1:38-3(c).

When they arrived at the hotel, the officers met with hotel security and staff who brought them to Mary. Before interviewing Mary, a hotel security officer informed the police officers that defendant was in the hallway outside his room. The officers, accompanied by a hotel security officer, then went to see defendant. As soon as they encountered defendant, the officers asked him to take his hands out of his pockets and place his hands on his head. The officers then frisked defendant and asked him for his name and identification. Defendant invited the officers into his room and gave them his license.

The officers asked defendant a series of questions about what had happened that morning and whether he had interacted with anybody from the hotel. Defendant initially denied meeting anyone and explained that he was staying at the hotel with his wife, who had gone to a seminar. Defendant also stated that he had only gone out of his hotel room to smoke a cigarette.

While Mancuso stayed with defendant in his room, Reynolds went to speak with Mary. Mary spoke Spanish, so another hotel employee translated the questions asked by Reynolds and the answers given by Mary. Mary told the officer that she had gone into defendant's room to deliver towels, defendant had shut the door, and then he placed her hands over his genitals. Mary also stated that defendant had told her "only five minutes." Reynolds asked Mary whether

3

she wanted to file a criminal complaint against defendant and Mary agreed to go to the police station to sign a complaint.

Reynolds then went back to question defendant further. Before re-entering the room, Mancuso came out and Reynolds informed him of what Mary said had happened. The officers agreed that based on Mary's statements, defendant's actions constituted criminal restraint and criminal sexual contact. When asked by a hotel security officer whether there were grounds to arrest defendant, the officers responded with "yeah" and "absolutely."

Reynolds and Mancuso then re-entered defendant's room and questioned him further about what happened. Over the next three-and-a-half minutes, defendant was asked numerous questions concerning what happened in his hotel room and whether he had any interactions with hotel staff.

Defendant initially denied having any issues with anyone from the hotel. When asked by one of the officers whether he was "sure that nothing happened between [him] and anybody in [his hotel] room," defendant replied that he was "[v]ery positive." Shortly thereafter, however, defendant acknowledged that a housekeeper had come into his room to deliver towels. When asked about his interactions with the housekeeper, defendant denied that he had touched the housekeeper or that his door had been shut. Finally, defendant was asked if he

A-0736-23

had anything else to tell the officers. Defendant responded no. The officers then informed defendant that he was under arrest and placed him in handcuffs.

Later that day, Mary went to the police station and provided further details to the investigating officers. She also prepared a written statement. Thereafter, defendant was indicted and charged with fourth-degree criminal sexual contact and third-degree criminal restraint.

Just before the beginning of trial, the State moved to admit the statements defendant had given to Reynolds and Mancuso. The trial court conducted a Rule 104 hearing outside the presence of the jury. The trial court did not hear any testimony at the Rule 104 hearing; instead, the court reviewed briefs and heard arguments from counsel. The trial court then granted the State's motion, explaining its reasons on the record.

The trial court never addressed the issue of whether defendant was in custody. Rather, the court reasoned that the officers had asked defendant "some preliminary questions," which the trial court characterized as "initial investigatory questions." The trial court then ruled that the State could use defendant's statements and introduce the portion of the footage from the police body-worn camera up to the point just before defendant was arrested.

A-0736-23

The matter then proceeded to trial. At trial, the State called three witnesses: Reynolds, Mancuso, and Mary. Mary testified through a Spanish interpreter. The State also introduced and played for the jury a redacted portion of the footage from Reynolds' body-worn camera. The footage included the police's initial encounter with and questioning of defendant, and the questioning that occurred after Reynolds had spoken with Mary.

At trial, Mary testified that she had dropped off towels in Room 1402, where defendant was staying. She stated that while in the room, defendant closed the door behind her and refused to let her leave. Mary went on to testify that defendant grabbed one of her hands and placed it on his genitals. Mary recalled that defendant "kept telling [her to] just lay in the bed for five minutes" and "get undressed." Mary explained that she pretended to comply with defendant's request and then pushed him away and ran out of the room. Mary then took shelter in another hotel room and called her manager, who called the police.

After the State rested, defendant testified on his own behalf. According to defendant, he was asleep when Mary entered his room to provide housekeeping services. Defendant claimed that when Mary came into the room, he jumped up in an uproar because he had left a do not disturb sign on the door.

6

He stated that he had responded "negatively" and "cursed," and had told Mary that he was going to complain about her to her manager.

At the conclusion of the presentation of the evidence, defendant moved for a judgment of acquittal. The trial court denied that motion.

Counsel then made closing arguments, and the court instructed the jury. After requesting playbacks of the footage from the body-worn camera and playbacks of certain witnesses' testimony, the jury convicted defendant of both charges.

On the conviction for third-degree criminal restraint, defendant was sentenced to three years of probation. On the conviction for fourth-degree criminal sexual contact, defendant was sentenced to eighteen months of probation and the court ordered that sentence to run concurrent to the three years of probation for criminal restraint conviction.

Defendant now appeals from his convictions.

II.

On appeal, defendant makes five arguments, which he articulates as follows:

POINT I – JACKSON'S CONVICTIONS MUST BE REVERSED BECAUSE THE COURT ERRONEOUSLY ADMITTED HIS STATEMENTS IN VIOLATION OF HIS MIRANDA RIGHTS.

A. Facts Relevant To The Trial Court's <u>Miranda</u> Determination.

B. Jackson Was In Custody Because He Was Surrounded By Police Officers And Hotel Security.

C. Jackson Was Subject To Express Questioning Constituting Interrogation.

[D.] The Erroneous Admission Was Not Harmless.

<u>POINT II</u> – THE COURT ERRONEOUSLY DENIED JACKSON'S <u>REYES</u> MOTION BECAUSE THE STATE FAILED TO PROVE EVERY ELEMENT OF CRIMINAL RESTRAINT.

<u>POINT III</u> – THE TRIAL COURT'S FAILURE TO INSTRUCT THE JURY ON HOW TO ASSESS THE COMPLAINANT'S PRIOR INCONSISTENT STATEMENTS AND JACKSON'S PURPORTED ORAL STATEMENTS WAS PLAIN ERROR.

A. The Court Failed To Instruct The Jury On The Substantive Use Of [Mary's] Prior Contradictory Statements.

B. The Court Failed To Instruct The Jury On How To Consider Statements That Jackson Allegedly Made.

<u>POINT IV</u> – THE COURT'S ERRONEOUS ADMISSION OF HEARSAY EVIDENCE DEPRIVED JACKSON OF A FAIR TRIAL.

<u>POINT V</u> – THE CUMULATIVE EFFECT OF THE ERRORS DENIED JACKSON A FAIR TRIAL AND REQUIRES REVERSAL.

Having reviewed the record and law, we reverse defendant's convictions for three reasons. First, the State should not have been allowed to admit defendant's statements, which were made to the police in violation of his constitutional rights. Second, the State improperly introduced hearsay evidence that buttressed the victim's credibility. Third, the trial court erred by not instructing the jury on how it should evaluate both the victim's and defendant's prior statements. The cumulative effect of those errors denied defendant a fair trial.

A.    Defendant's Statements to the Police.

"The right against self-incrimination is guaranteed by the Fifth Amendment to the United States Constitution and this state's common law, now embodied in statute, N.J.S.A. 2A:84A-19, and evidence rule, N.J.R.E. 503." State v. Bullock, 253 N.J. 512, 532 (2023) (quoting State v. Nyhammer, 197 N.J. 383, 399 (2009)) (internal quotation marks omitted). A person who is subject to police interrogation while in custody "must be adequately and effectively apprised of his [or her] rights." Miranda v. Arizona, 384 U.S. 436, 467 (1966); Bullock, 253 N.J. at 532. Those rights include warning suspects

that they have the right to remain silent, that they have the right to have an attorney present during questioning, and that anything they do say can and will be used against them in court.  Miranda, 384 U.S. at 479.

Statements obtained during a custodial interrogation may not be admitted into evidence unless the defendant has been advised of his or her constitutional rights, has waived those rights, and agreed to be questioned.  State v. Hubbard, 222 N.J. 249, 265 (2015).   "The essential purpose of Miranda is to empower a person . . . with knowledge of his basic constitutional rights so that he can exercise, according to his free will, the right against self-incrimination or waive that right and answer questions."  Nyhammer, 197 N.J. at 406.

Whether an individual is in custody for Miranda purposes hinges on "whether there has been a significant deprivation of the suspect's freedom of action based on the objective circumstances, including the time and place of the interrogation, the status of the interrogator, the status of the suspect, and other such factors."  Bullock, 259 N.J. at 533 (quoting State v. P.Z., 152 N.J. 86, 103 (1997)) (internal quotation marks omitted).  "The inquiry is an objective one, determined by 'how a reasonable [person] in the suspect's position would have understood his situation.'"  Ibid. (alteration in the original) (quoting Hubbard, 222 N.J. at 267).  "The inquiry is not based 'on the subjective views harbored by

either the interrogating officers or the person being questioned.'" Ibid. (quoting Hubbard, 222 N.J. at 267).

Normally, an appellate court will defer to the factual findings made by the trial court if those findings are supported by substantial credible evidence in the record. State v. Erazo, 254 N.J. 277, 297 (2023). Appellate courts do not, however, defer to factual findings that are unsupported by the record or to the trial court's interpretation of the law. Hubbard, 222 N.J. at 262-63.

In this matter, the trial court never determined if defendant was in custody when he was questioned by the police officers. Instead, the court determined that the officers' questions were preliminary inquiries.

The objective evidence establishes that defendant was detained by the police when he was questioned. The footage from the police body-worn camera shows that when the police first encountered defendant, they immediately directed him to take his hands out of his pockets and place his hands on his head. They then frisked him, asked for his identification, and asked him a series of questions concerning what had happened in his room that morning. Officer Reynolds then went to speak with Mary and Officer Mancuso, and at least one hotel security officer stayed in the room with defendant.

After hearing Mary's version of what happened, the officers conferred and agreed that defendant's actions constituted criminal restraint and criminal sexual contact. The officers then re-entered defendant's room and continued to question him. At that point, defendant was questioned by two officers and there was at least one hotel security officer stationed at the door. Those undisputed facts objectively establish that defendant was in custody both during his initial questioning and during the follow up questioning.

The objective facts also establish that the officers' questioning of defendant was interrogational and designed to elicit incriminating statements. "[T]he term 'interrogation' under <u>Miranda</u> refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." <u>Hubbard</u>, 222 N.J. at 267 (alteration in the original) (quoting <u>Rhode Island v. Innis</u>, 446 U.S. 291, 301 (1980)) (internal quotation marks omitted).

The questioning by Officers Reynolds and Mancuso included the following seventeen questions:

- "Did you have any issues with anybody?"

- "So you're here with your wife?"

- "Okay, was anybody else in your room?"

- "Nobody's been in here?"

- "Okay, so nothing happened between you and anybody . . . in this room?"

- "Are you sure that nothing happened between you and anybody in this room?"

- "You never had any interactions with any employees from this hotel at all?"

- "Okay, well what about [interactions in] this room . . . [did] housekeepers ever [come] in?"

- "And nothing else happened between you [and the housekeeper]?"

- "No touching?"

- "Did she say anything to you?"

- "[She] [j]ust asked you if you wanted the room cleaned and you said no?"

- "And then she put towels in [the bathroom]?"

- "She walked out on her own?"

- "Okay, was the door shut--at any time?"

- "All right, how come when I asked you if you had any interactions with anybody in this room you told me no?"

- "Sir, do you have anything else you would like to tell us?"

13

A-0736-23

Defendant was then arrested.

Those questions were not preliminary, background questions inquiring about defendant's identity or the general nature of whether something happened. See State v. Ebert, 377 N.J. Super. 1, 9 (App. Div. 2005) (explaining that "'[g]eneral on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process' is not subject to Miranda warnings" (quoting Miranda, 384 U.S. at 477)). Instead, by the second round of questioning defendant, the officers already had Mary's version of events, which they objectively credited because they asked her to come to the police station and sign a criminal complaint. Moreover, the officers had assessed Mary's account and believed that defendant's actions constituted criminal restraint and criminal sexual contact.

Consequently, the trial court erred in finding that the State could use the footage from the officer's body camera, during which defendant made multiple statements in response to multiple questions. That error was particularly egregious during the second portion of defendant's interrogation, when Reynolds came back to continue the questioning after he had spoken to Mary and heard her version of what had happened.

14

In summary, because defendant was subject to custodial interrogation without being given <u>Miranda</u> warnings, his constitutional rights were violated. It was reversible error for the State to introduce the footage from the body-worn camera and allow the jury to hear defendant's statements to the police officers.

B.     The Hearsay Testimony By the Officers.

"Out-of-court statements offered to prove the truth of the matter asserted are hearsay." <u>State v. White</u>, 158 N.J. 230, 238 (1999) (citing N.J.R.E. 801). Hearsay is not admissible at trial, except as otherwise provided through an exception to the general rule. N.J.R.E. 802. The bar on hearsay exists "to ensure the accuracy of the factfinding process by excluding untrustworthy statements, such as those made without the solemnity of the oath, and not subject to cross-examination by the accused or the jury's critical observation of the declarant's demeanor and tone." <u>State v. Engel</u>, 99 N.J. 453, 465 (1985).

Appellate courts review a trial court's evidentiary rulings for abuse of discretion. <u>State v. Prall</u>, 231 N.J. 567, 580 (2018); <u>Est. of Hanges v. Metro. Prop. & Cas. Ins. Co.</u>, 202 N.J. 369, 383-84 (2010). If no objection is made at trial, we review the issue under the plain error standard. <u>State v. Frisby</u>, 174 N.J. 583, 591 (2002). To constitute plain error, the admission of the hearsay

A-0736-23

must be "clearly capable of producing an unjust result." Ibid. (quoting R. 2:10-2).

Defendant, for the first time on appeal, raises two hearsay challenges. He contends that both Officer Reynolds and Officer Mancuso gave inadmissible hearsay testimony.

Concerning Officer Reynolds, defendant challenges the following testimony:

> Q    And was [Mary] able to tell you what had happened to cause her to be crying and upset?
>
> A    Yes.
>
> Q    And what was that? What did she say?
>
> A    That she was dropping off towels into a hotel room and then the occupant of that room closed the door, refused to let her to leave, and then actually grabbed-- physically grabbed her and placed one of her hands on his genitals.

That testimony by Reynolds was inadmissible hearsay. Reynolds was recounting Mary's out-of-court statement. The statement was also offered for the truth of what Mary told Reynolds.

The question of whether that hearsay testimony constituted plain error is a close call. Mary testified at trial, so she was subject to cross-examination. The State, however, committed plain error by introducing Reynolds' hearsay

16

testimony because Mary's credibility was a critical issue. Reynolds' hearsay testimony was clearly capable of bolstering Mary's credibility because it provided a version of events that was consistent with what Mary testified to at trial. In that regard, the hearsay testimony did not highlight any of the inconsistencies between Mary's several out-of-court statements of what happened and Mary's in-court statement of what happened.

Defendant also challenges Officer Mancuso's testimony in response to the following question:

Q     And why did you go to speak with Mr. Jackson?

A     Because [s]ecurity said that he was the suspect for the investigation.

Officer Mancuso's statement was not offered to prove the truth of the matter asserted. Instead, it was offered to show why the officers initially approached and spoke with defendant. Thus, we discern no reversible error in the admission of Mancuso's testimony. See State v. Bankston, 63 N.J. 263, 268 (1973) (explaining that "the hearsay rule is not violated when a police officer explains the reason he approached a suspect or went to the scene of the crime by stating that he did so 'upon information received'").

A-0736-23

C.     The Jury Instructions.

"Appropriate and proper jury instructions are essential for a fair trial." State v. A.L.A., 251 N.J. 580, 591 (2022).  A jury charge must "'correctly state the applicable law, outline the jury's function and be clear in how the jury should apply the legal principles charged to the facts of the case at hand.'"  Id. at 591-92 (quoting Est. of Kotsovska v. Liebman, 221 N.J. 568, 591 (2015)).  Moreover, jury charges should be tailored to the specific facts of the case.  See State v. Savage, 172 N.J. 374, 389 (2002) (pointing out that New Jersey courts "regularly have noted the importance of tailoring the jury charge to the facts of the case").

Appellate courts "review for plain error the trial court's obligation to sua sponte deliver a jury instruction when a defendant does not request it and fails to object at trial to its omission."  State v. Alexander, 233 N.J. 132, 141-42 (2018) (first citing State v. Cole, 229 N.J. 430, 455 (2017); and then citing State v. Funderburg, 225 N.J. 66, 79 (2016)).  "To warrant reversal, the unchallenged error must have been 'clearly capable of producing an unjust result.'"  Id. at 142 (quoting R. 2:10-2).  "The mere possibility of an unjust result is not enough." Funderburg, 225 N.J. at 79.  Instead, "[t]he possibility must be real, one sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached."  Alexander, 233 N.J. at 142

18

(alteration in original) (quoting State v. Macon, 57 N.J. 325, 336 (1971)) (internal quotation marks omitted).

Defendant argues that the trial court erred by failing to provide two instructions to the jury: (1) an instruction that Mary's prior statements could be used as substantive evidence; and (2) an instruction that the jury should exercise "caution" when considering Mary's testimonial recollection of what defendant told her in the hotel room.

Concerning his first argument, defendant contends that the court should have sua sponte instructed the jury with the model charge on prior contradictory statements of a witness. See Model Jury Charges (Criminal), "Prior Contradictory Statements of Witnesses (Not Defendant)" (approved May 23, 1994). That instruction states, in relevant part:

> Evidence, including a witness' statement or testimony prior to the trial, showing that at a prior time a witness has said something which is inconsistent with the witness' testimony at the trial may be considered by you for the purpose of judging the witness' credibility. It may also be considered by you as substantive evidence, that is, as proof of the truth of what is stated in the prior contradictory statement.
>
> [Ibid.]

At trial, the defense challenged many of the inconsistencies between Mary's testimony and the statements she had previously made to the police.

While defense counsel did not request the jury instruction on prior contradictory statements, the court's failure to give that instruction was capable of producing an unjust result. Mary's testimony was critical to the State's case. The inconsistencies were pointed out. Therefore, the trial court should have sua sponte given the prior contradictory statements instruction to guide the jury on how to properly evaluate Mary's testimony.

Defendant also argues that the trial court erred by failing to instruct the jury on how to evaluate Mary's testimony as to what defendant said to her. In that regard, defendant contends that the trial court should have given the model jury charge on statements attributed to a defendant. See Model Jury Charges (Criminal), "Statements of Defendant" (rev. June 14, 2010). That model charge was developed based on the guidance from the New Jersey Supreme Court in State v. Hampton, 61 N.J. 250 (1972) and State v. Kociolek, 23 N.J. 400 (1957). Thus, the charge is often referred to as the Hampton/Kociolek charge.

That charge directs that out-of-court statements attributed to a defendant are to be considered with caution and that they should be closely examined because of the possibility of misunderstanding by the hearer or untruth. Model Jury Charges (Criminal), "Statements of Defendant," at 1. The charge also informs the jury that its "function [is] to determine whether or not the statement

20

was actually made by the defendant, and, if made, whether the statement or any portion of it is credible." Ibid.

The trial court is mandated to give the instruction about a defendant's out-of-court statements even if the instruction is not requested. State v. Jordan, 147 N.J. 409, 425 (1997) (explaining that "[w]hether requested or not, whenever a defendant's oral or written statements, admissions, or confessions are introduced in evidence the Hampton instruction, directing the jury to determine the credibility of the statements . . . should be given"). The failure to give the instruction, however, is not per se reversible error. Ibid. Alternatively, if the instruction is not given, the State must establish that defendant's alleged statement was "unnecessary to prove defendant's guilt because there [was] other evidence that clearly establishe[d] guilt, or . . . defendant . . . acknowledged the truth of his statement." Id. at 425-26.

In this case, the instruction should have been given because the State needed the jury to find that Mary's recollections of defendant's prior statements were credible and accurate. Mary testified that defendant told her to lie down on the bed and take her clothes off. She went on to explain to the jury that based on those statements, she was afraid that defendant would rape her. Mary's testimony, recounting what defendant had allegedly said to her, was thus critical

21

to the State's criminal restraint charge. Therefore, the jury should have been given the model jury charge on statements attributed to a defendant.

D. The Cumulative Impact of the Errors.

"Even if an individual error does not require reversal, the cumulative effect of a series of errors can cast doubt on a verdict and call for a new trial." State v. Sanchez-Medina, 231 N.J. 452, 469 (2018) (citing State v. Jenewicz, 193 N.J. 440, 473 (2008)). Therefore, if there is a strong probability that defendant did not receive a fair trial, or if a combination of errors casts sufficient doubt on a verdict, then the verdict should be reversed. See State v. Burney, 255 N.J. 1, 29 (2023) (explaining that "the predicate for relief for cumulative error must be that the probable effect of the cumulative error was to render the underlying trial unfair" (quoting State v. Wakefield, 190 N.J. 397, 538 (2007)) (internal quotation marks omitted)); Jenewicz, 193 N.J. at 473 (stating that when the "cumulative effect" of a combination of errors "cast[s] sufficient doubt on a verdict," reversal is required).

The error in allowing the State to admit defendant's statements given to the police was sufficient on its own to warrant reversal. That error violated a fundamental constitutional right. See Bullock, 253 N.J. at 533.

The errors concerning the hearsay testimony by Officer Reynolds and the trial court's failure to give two jury instructions are closer calls because defendant's counsel did not object and did not request the instructions. Nevertheless, those errors in combination are sufficient to raise a strong doubt about the fairness of defendant's trial. Consequently, the cumulative effect of the errors demonstrates that defendant should receive a new trial.

## III.

Given our rulings, we need not address defendant's arguments concerning the denial of his motion for acquittal. Nevertheless, we provide some guidance in case the issue comes up on remand. Defendant contends that the State failed to present evidence that Mary was restrained in circumstances exposing her to a risk of serious bodily injury. That contention is not correct.

"A person commits a crime of the third degree if he [or she] knowingly . . . [r]estrains another unlawfully in circumstances exposing the other to risk of serious bodily injury . . . ." N.J.S.A. 2C:13-2(a). So, there are three elements of criminal restraint in the third-degree. See Model Jury Charges (Criminal), "Criminal Restraint (N.J.S.A. 2C:13-2(a))" (rev. June 19, 2000) (citation reformatted). The State must prove that (1) defendant knowingly restrained the victim; (2) defendant knew that the restraint was unlawful; and (3) the restraint

A-0736-23

occurred under circumstances in which defendant knowingly exposed the victim to a risk of serious bodily injury.  Ibid.

Defendant argues that the State presented no evidence that Mary was exposed to a risk of serious bodily injury or that defendant knowingly exposed Mary to that risk.  Mary's testimony at trial refuted that argument.  Mary testified that she was restrained by defendant in his hotel room and that defendant directed her to lie down on the bed and take her clothes off.  She then explained that she was afraid of being raped.

We hold that Mary's testimony, together with the other evidence presented by the State at trial, was sufficient for a jury to find beyond a reasonable doubt that defendant knowingly restrained Mary under circumstances which exposed her to the risk of serious bodily injury.  Severe mental anguish can constitute serious bodily harm.  See Collins v. Union Cnty. Jail, 150 N.J. 407, 422 (1997) (explaining that "severe mental anguish can satisfy the serious bodily harm element for" aggravated sexual assault (citing State v. Walker, 216 N.J. Super. 39, 43-44 (App. Div. 1987), certif. denied, 108 N.J. 179 (1987))).  Based on Mary's testimony, a jury could find that she experienced severe mental anguish when she thought she might be raped.

A-0736-23

## IV.

In summary, we reverse defendant's convictions. We vacate his sentence and judgment of conviction and remand for further proceedings.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

25

A-0736-23